EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

ROADWAY EXPRESS, INC., Defendant.

No. 83–2856–H.

United States District Court,
W.D. Tennessee, W.D.

Jan. 25, 1984.

Joseph Ray Terry, Regional Atty., Lawrence J. Kamenetzky, Supervisory Trial Atty., Carolyn Howard, Sr. Trial Atty., Memphis, Tenn., for E.E.O.C.

Michael D. Cullins, Roadway Express, Inc., Akron, Ohio, Ross B. Clark, II, and Jack D. Kopald, Laughlin, Halle, Clark, Gibson & McBride, Memphis, Tenn., for defendant.

ORDER GRANTING ENFORCEMENT OF EEOC's ADMINISTRATIVE SUBPOENAS AND GRANTING EEOC's APPLICATION FOR PROTECTIVE ORDER PROHIBITING ROADWAY EXPRESS, INC. FROM TAKING DEPOSITION OF DIRECTOR, MEMPHIS DISTRICT OFFICE, EEOC

HORTON, District Judge.

The Equal Employment Opportunity Commission (EEOC) has applied to the Court for a protective order prohibiting respondent Roadway Express, Inc., (Roadway) from taking the deposition of Julia A. Poussaint, District Director of the Memphis District of the EEOC. For the reasons discussed below, the Court hereby grants applicant's motion for a protective order and prohibits the taking of Ms. Poussaint's deposition as sought by Roadway. Further, after consideration of the issues and careful reading of briefs filed by both parties, the affidavits of District Director Julia A. Poussaint, and the subpoenas issued by Director Pouissant to Roadway in the matter of Joe Cooper and John Fleming Martin, the Court concludes Roadway Express, Inc. should comply with the administrative subpoenas that are the subject of this action.

## STATEMENT OF CASE

Two former employees of respondent, Joe M. Cooper and John F. Martin, filed charges with the EEOC in which they contend that Roadway Express, Inc., discriminated against them because of their race. Pursuant to its investigation ˙of these charges, the EEOC made several requests of Roadway for information. The EEOC and Roadway communicated and corresponded over a several month period, and when Roadway refused to comply fully with its requests for information, the EEOC, on March 18, 1983, issued two administrative subpoenas in the matter of Joe Cooper and John Fleming Martin pursuant to the powers granted it by 42 U.S.C. § 2000e–9, and § 1601.16 of the Commission's Procedural Regulations, 29 C.F.R. § 1601.16 (1983). Each subpoena *duces tecum* required Roadway to provide access to certain evidence for examination or copying on March 30, 1983.

Roadway petitioned Julia A. Poussaint, District Director of the Memphis, Tennessee, EEOC office in an effort to have the subpoenas revoked. Roadway sought revocation on the grounds that:

1. EEOC Employment Opportunity Specialist Eddie R. Walsh (EOS Walsh), who was investigating the charges against Roadway, harbored personal animosity toward Roadway and had vindictively initiated issuance of the subpoenas in bad faith;

2. the Cooper subpoena (and the request immediately preceeding it) had expanded the time period for which information was sought from the period January 1, 1981 through December 31, 1981, to the period January 1, 1981 through the time of issuance of the subpoena (March 18, 1983). Roadway contends this expansion was neither reasonable nor based on just cause.

3. the Martin subpoena requested personnel files of eleven named employees plus those of all currently employed supervisor/dispatchers in Roadway's Memphis facility. Roadway contended that this was unnecessarily broad and that revealing such personal files would expose Roadway to potential litigation.

Director Poussaint issued on April 13, 1983, a thorough written Determination denying Roadway's request for revocation of the subpoenas. Her written Determination stated that an internal investigation had been undertaken to determine the truthfulness of the charge that EOS Walsh had expressed animosity toward Roadway. Re-

gardless of the outcome of the investigation, Director Poussaint stated that the expansion of the time period came about because Roadway did not provide the documents requested for the time period January 1, 1981 to December 31, 1981, as requested by the EEOC on June 21, 1982. When the EEOC again requested the information on February 15, 1983, a full year beyond December 31, 1981, had gone by and the EEOC determined that information covering an additional period of time would provide it with more comprehensive information on Roadway's employment practices. Director Poussaint also determined that the request for personnel files was not unnecessarily broad but, rather, pertained to the charge being investigated. Roadway's objection that production of personnel records could expose Roadway to potential litigation was denied since the law makes it illegal for any officer or employee of the EEOC to make public any information obtained by the EEOC pursuant to its investigations. *See* 42 U.S.C. 2000e–8(e).

On April 21, 1983, Roadway appealed Director Poussaint's denial to the Office of the Commission's General Counsel in Washington, D.C., who also denied Roadway's petition. (The General Counsel did modify the Martin subpoena so that instead of producing "personnel files," Roadway was ordered to produce "all evaluations, attendance records, production records, disciplinary actions taken against the employee, and exit or termination reports, if applicable, any other documents relating to job performance from the personnel files.")

Following these denials of its petition to revoke the subpoenas, Roadway refused to comply with the subpoenas and the EEOC filed with the Court an Application for Order to Show Cause Why a Subpoena Should Not be Enforced. Roadway responded to the Order to Show Cause and based its opposition to enforcement of the subpoenas on the same grounds cited above. Roadway then filed a Notice of Deposition evidencing its plan to depose Director Poussaint. The EEOC moved that the Court issue a protective order prohibiting Roadway from deposing Ms. Poussaint. On January 13, 1984, the Court held a hearing on the Motion for a Protective Order.

## CONTENTIONS

Roadway contends the subpoena *duces tecum* issued in the Joe M. Cooper charge is not enforceable because (1) it was not issued pursuant to a valid charge, (2) it is not limited to seeking information that is relevant and (3) it was not issued for a proper purpose. Roadway claims this subpoena was deliberately framed to gather information entirely unrelated to the charge in such a way as to present the greatest burden to respondent. Further, Roadway contends the charge is not valid because it was not first filed with the Tennessee Commission for Human Development. In addition, Roadway charges the EEOC has requested confidential employee personnel records which have nothing to do with the discharge or termination of Cooper and Martin. Finally, Roadway claims the two administrative subpoenas were issued by the EEOC in bad faith stemming from Mr. Walsh's personal animosity toward Roadway. To substantiate this bad faith on the part of the EEOC, Roadway contends that it must seek a "limited amount" of discovery against the EEOC, "specifically to test the knowledge of District Director as to Walsh's attitude toward Respondent and to learn the details of an investigation of Eddie Walsh which the District Director claimed to have initiated."

The EEOC contends the administrative subpoenas were issued in support of the Commission's investigation of charges of unlawful employment practices filed against Roadway by two discharged employees, Joe M. Cooper and John Fleming Martin. The EEOC denies that it acted in bad faith or that any alleged animus of any EEOC employee against Roadway or its personnel had anything to do with the issuance of the subpoenas or the time frame expansion on the data requested. The EEOC also contends that it is improper to allow discovery in a summary proceeding

**1066**

such as this action to enforce an administrative subpoena.

## APPLICABLE LAW

Section 2000e–9 of Title 42, United States Code, provides that section 161 of Title 29 governs all hearings and investigations conducted by the EEOC. Under 29 U.S.C. § 161, the EEOC is authorized to issue subpoenas, provided the subject matter of the subpoena is related to an agency investigation and the subpoena describes with definiteness the evidence sought. 29 U.S.C. § 161(1). When any person refuses to comply with such subpoena, the district court is empowered to issue an order requiring that person to appear before the EEOC and produce evidence or testify as directed by the subpoena. 29 U.S.C. § 161(2). Failure to obey such a court order is punishable as contempt. *Id.*

Proceedings to enforce administrative subpoenas are summary in nature.

> Obviously, if the enforcement of valid subpoenas, the issuance of which is a mere incident in a case, were to require all of the formalities of a civil suit, the administrative work of the [agency] might often be subject to great delay. We think that such was not the intention of the Congress, and that this clearly was indicated by the use of the simple and unambiguous words with which it described this proceeding.

*E.E.O.C. v. Bay Shipbuilding Corp.*, 668 F.2d 304, 308–09 (7th Cir.1981) (quoting *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450, 451 (6th Cir.1941)).

■ Upon a showing by the agency that (1) the subpoena is within the authority of the agency; (2) the demand is not too indefinite; and (3) the information sought is reasonably relevant, the court should order compliance with the EEOC subpoenas. *E.E.O.C. v. Bay Shipbuilding*, 668 F.2d at 308 (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950)).

■ Consistent with the summary nature of proceedings to enforce an administrative subpoena, discovery is usually not permitted. The decision whether to allow such discovery is in the trial judge's discretion. *United States v. RFB Petroleum, Inc.*, 703 F.2d 528, 533 (Temp.Emer.Ct.App. 1983).

> [O]nce the government [agency] has met its burden of proof by showing the subpoenas were issued for a lawful purpose and that the information sought is relevant to that purpose, the [respondent] must "meet the heavy burden of showing the extreme circumstances that would justify further inquiry into the propriety of the subpoenas."

*Id.* (quoting *United States v. Juren*, 687 F.2d 493, 494 (Temp.Emer.Ct.App.1982), *cert. denied*, — U.S. —, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983)) (footnotes omitted).

■ In order for Roadway to meet that heavy burden, general allegations of bad faith will not suffice. "Unsupported allegations of bad faith and improper purpose are often made against regulatory agencies to hinder administrative investigations ... Such attempts to undermine the enforcement process should not be tolerated; allegations of bad faith and improper purpose must be buttressed with specific facts." *United States v. RFB Petroleum, Inc.*, 703 F.2d at 532 (quoting *United States v. Juren*, 687 F.2d at 494).

Moreover, in addition to making specific factual allegations of bad faith, Roadway must "put in issue the good faith of the agency seeking enforcement, not simply the particular agent who managed the proceedings." *N.L.R.B. v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3d Cir. 1979) (citing *United States v. LaSalle National Bank*, 437 U.S. 298, 314–19, 98 S.Ct. 2357, 2366–68, 57 L.Ed.2d 221 (1978)). Roadway has never challenged the good faith of the EEOC, only the good faith of EEOC employee Walsh.

■ This Court is of the opinion Roadway should not be permitted to take the deposition of District Director Poussaint. Roadway seems to think that because Roadway believes it had valid reasons for discharging both Cooper and Martin, and

because Roadway explained its reasons to the EEOC in writing, the EEOC should accept Roadway's determination that Cooper and Martin were fired for good cause and cease its investigation.

The EEOC stated to the Court, in its brief filed October 18, 1983:

> Both subpoenas request information regarding policies and practices of the company relating to rules on performance, conduct, and disciplinary procedures. Also, both subpoenas request information from certain personnel files in order to ascertain comparative data on similarly situated persons of different races. Since the Charging Party in each of these two charges is a black male alleging that he was terminated because of his race, the information on rules of performance, conduct, and disciplinary procedures is necessary to determine what rule either of the two Charging Parties violated and whether Respondent followed the established procedure in each of their cases. The information contained in various personnel files will yield facts as to whether either of the black Charging Parties were treated more harshly under Respondent's rules than were similarly situated white employees who violated the same rules. The question is not merely whether the reasons for any dissimilar treatment have merit, per se, but whether those reasons are pretextual and whether they reflect bias, conscious or sub-conscious, based upon race. It is on this ground that it is relevant to both of the charges to investigate personnel files of other similarly situated employees to determine how employees of different races were treated in comparable situations.

As indicated in the preceding paragraphs when the information requested is measured in light of the subject charges which triggered the investigation of Roadway by the Commission, the information sought is not only highly relevant, it is essential to the Commission's investigation of the charges. After all, "[I]t is clearly not enough under Title VII that the procedures utilized by employers are fair in form. These procedures must be fair in operation." *Rowe v. General Motors Corporation,* 457 F.2d 348, 355 (5th Cir.1972). The Commission cannot abdicate to Roadway's purported good faith its Congressional mandate of removing all the vestiges of discrimination. *Rowe, supra.*

In carrying out the mandate of Congress to eradicate the last vestiges of discrimination and in pursuing the investigation of the allegations of the subject charges, it is mandatory that the Commission review Respondent's "pattern of action" in relation to the charges under investigation. *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir.1969). Understandably, this requires an expenditure of time and effort on the part of the Respondent; however, the Commission's subpoenas are reasonable and go to the essence of the charges and do not place an undue burden on Respondent. The high degree of relevance of the data sought essentially overcomes any burdensomeness objection which might be raised by Respondent. As the Court observed in *Kessler [& Company v. EEOC], supra* [53 F.R.D. 330] at 336 [ (1971) ]:

> If the information or records sought is relevant or material to the charge under investigation and the EEOC proceeds as authorized by the statute, then any inconvenience or difficulty (which is actually inherent in *any* compulsory process proceeding) must be considered as a "part of the social burden of living under government." *Bradley Lumber Co. v. NLRB,* 84 F.2d 97, 100 (5th Cir.1936).

After reviewing the entire record in this case, the Court is satisfied this EEOC investigation is being conducted (1) pursuant to a legitimate purpose, (2) the investigation is relevant to that purpose, (3) the information sought is not already within the EEOC's possession, (4) all administrative steps required by law have been followed, (5) the investigation is within the legal authority of the EEOC, and (6) the information sought by the subpoenas issued by the Commission are definite and not indefinite. *United States v. Morton*

*Salt Company*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Having reached this conclusion, the Court finds it unnecessary to deal with the various other issues raised by Roadway.

It is therefore, by the Court

ORDERED that:

1) The application of the Equal Employment Opportunity Commission for enforcement of its administrative subpoenas is hereby granted. The Court hereby directs and orders Roadway Express, Inc., to forthwith and without further delay fully comply with the subpoenas *duces tecum* which were issued and served upon it by the EEOC and which are the subject of this proceeding. In order to expedite this matter, the Court hereby requires Roadway Express, Inc. to inform the EEOC in writing, within five days from the date of this order of its intent to forthwith and without any further delay fully comply with the subpoenas.

2) The application of the EEOC for a protective order *prohibiting* Roadway Express, Inc. from taking the deposition of Julia A. Poussaint, District Director of the Memphis District Office of the Equal Employment Opportunity Commission is *granted.*