**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner,**

**v.**

**ROADWAY EXPRESS, INC., Respondent.**

**No. 5:99 MC 7.**

United States District Court, N.D. Ohio, Eastern Division.

Dec. 15, 1999.

---

Carlton L. Preston, Equal Employment Opportunity Commission, Washington, DC, for petitioner.

James A. Rydzel, Jones, Day, Reavis & Pogue, Cleveland, OH, for respondent.

## ORDER GRANTING PETITIONER'S ORDER TO SHOW CAUSE

WELLS, District Judge.

This case is before the Court on Petitioner Equal Employment Opportunity Commission's ("EEOC") Order To Show Cause seeking to enforce its subpoena. Respondent Roadway Express, Inc. ("Roadway") filed a brief in opposition, arguing that 1) the Commissioner's Charge requested information outside the scope of its authority; 2) the requested information was not relevant; and 3) permitting the EEOC to obtain the requested information would put an undue burden on the Respondent. For the reasons that follow, Petitioner's Order To Show Cause is granted.

### I. *Background*

The EEOC issued a Commissioner's Charge against Roadway on 3 November 1994. (Pet'r attach. 1). The Charge alleged that *"since at least July 27, 1991"* Roadway had engaged in a pattern and practice of race and sex discrimination covering a ten-state area in violation of Title VII of the Civil Rights Act of 1964. Specifically, the Charge made the following four allegations:

*The unlawful discriminatory practices include, but are not limited to:*

1. *Failing and/or refusing to promote Blacks because of their race (Black) into sales and upper-level management positions;*

2. *Failing and/or refusing to hire individuals based on their sex (female) into operative and laborer positions;*

3. *Maintaining a hostile work environment and/or failing to provide a working environment free from racial and sex based harassment, intimidation, and insults; and*

4. *Maintaining policies and practices and other terms and conditions of employment which discriminate against individuals based on their race (Black) and/or sex (female).*

(Pet'r attach. 1).

The EEOC requested information from Roadway. (Pet'r Mot. at 2). In response, Roadway turned over extensive documentation. On 12 April 1996 the EEOC requested additional information. (Resp't Ex. G). Roadway again supplemented its responses, but refused to provide information concerning either the gender of individuals promoted into sales and upper-level management positions or the race of individuals hired for operative and laborer positions. (Resp't Ex. H).

On 22 July 1996, the EEOC issued a subpoena setting forth eleven requests for information covering the period from 27 July 1991 to the present. The only three requests at issue are # 8 (requesting information about the applications of individuals who applied for operative and laborer positions), # 9 (requesting information about individuals hired into operative and laborer positions) and # 11 (requesting race and gender of individuals in sales, upper-level management, operative and laborer positions). (Resp't Ex. I).

Roadway filed a petition to revoke or modify the subpoena. (Resp't Ex. J). In response, the EEOC modified requests # 8 and # 9 so that they did not cover a ten-state area, but instead only covered five facilities. The EEOC also modified request # 11 so Roadway had to provide only race and gender information concerning employees whose records had already been provided. (Resp't Ex. J).

In response to the subpoena, Roadway sent application and hiring documents only for the period of 27 July 1991–3 November 1994, the day the Charge was issued, and did not provide the race and gender information. (Resp't Mtn. 8–9; Pet'r Mtn. 3–4). The EEOC wrote to Roadway requesting the missing race and gender information along with the remainder of the application and hiring documents from 3 November 1994 to the present. (Resp't

Ex. M). Later, in an effort to compromise the dispute, the EEOC limited its request to information from 27 July 1991 through 31 October 1996, approximately two years after the Charge was issued. (Resp't Ex. M). Roadway refused to provide any additional information. (Resp't Ex. N). The EEOC filed this Order To Show Cause to compel compliance with the subpoena.

## II. *Law an Analysis*

■ Title VII requires the EEOC to investigate complaints of employment discrimination based on race and gender. 42 U.S.C. §§ 2000e–2(a) and –5(b). A Charge can be filed with the EEOC by an individual or by a commissioner if s/he believes an employer has engaged in a pattern of discriminatory practice. 42 U.S.C. § 2000e–5(b). Once a Charge has been issued, the EEOC has the authority to serve subpoenas to gain access to "any evidence ... relevant to the Charge under investigation." 42 U.S.C. § 2000e–8(a). Courts have used a 3—part test to determine if an EEOC subpoena should be enforced. The elements are: 1) Did the Charge set forth the necessary information; 2) Is the requested information relevant; and 3) Does the request put an undue burden on the defendant. *EEOC v. Shell Oil*, 466 U.S. 54, 72 n. 26, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984); *EEOC v. Ford Motor Credit*, 26 F.3d 44, 45 (6th Cir.1994).

### A. *Information Necessary in a Commissioner's Charge*

■ The adequacy of a Charge is a jurisdictional prerequisite to judicial enforcement of an EEOC subpoena. *Shell Oil*, 466 U.S. at 65, 104 S.Ct. 1621. The Supreme Court set forth a four-part test to determine the adequacy of a Charge. To meet the test the Charge must contain the following information:

A. *The groups of persons believed to have been discriminated against;*

B. *The categories of employment positions from which they have been excluded;*

C. *The methods by which the discrimination may have been effected; and*

D. *The periods of time in which the EEOC expects discrimination to have been practiced.*

*Id.* at 72, 104 S.Ct. 1621.

In the instant case Roadway only has challenged the validity of the Charge on the fourth element concerning the period of time in which the discrimination occurred.

■ Generally, the legislative purpose behind issuing a Charge is to notify employers about the nature of the accusations against them. However, the Charge was not envisioned as a substantive constraint on the agency's investigative authority. *Id.* at 74–75, 104 S.Ct. 1621. As such, the Supreme Court has interpreted Title VII to give the EEOC very broad powers of investigation. *Id.* Providing the time period in which the alleged discrimination took place satisfies legislative purpose by 1) giving fair notice of the allegations, 2) informing the employer of when the suspected discrimination took place so it can undertake its own inquiry into employment practices and voluntarily comply with substantive provisions of Title VII, and 3) alerting the employer to the range of personnel records that might be relevant to the agency's investigation and ensuring they are not inadvertently destroyed. *Id.* at 79, 104 S.Ct. 1621.

Roadway does not contend that the EEOC failed to allege a time period in which the suspected discrimination took place. Instead, Roadway argues that the EEOC does not have the authority to investigate discrimination which takes place after the Charge is issued. As such, Roadway argues that the Charge language should be interpreted to limit the investigation from 27 July 1994 until 3 November 1994, the day the Charge was issued. (Resp't Mot. 30).

■ However, applying the above standards this Court finds Roadway's arguments unpersuasive. Both the time period set forth in the Charge and the more limited time period agreed to by the EEOC comply with legislative purpose and

the requirements of *Shell Oil. Id.* at 72, 74–75, 79, 104 S.Ct. 1621. By giving specific dates, the EEOC put Roadway on notice of the exact period of time covered by its investigation. *Id.* Furthermore, the EEOC has authority to seek information after the date the Charge was issued. *Shell Oil* gives the Commission broad powers of investigation. *Id.* at 74–5, 68–9, 104 S.Ct. 1621. In light of this power the Sixth Circuit has permitted investigation beyond the date of a Charge. *EEOC v. Roadway Express, Inc.,* 580 F.Supp. 1063 (1984) (W.D.Tenn.1984), aff'd. 750 F.2d 40 (6th Cir.1984). The EEOC is permitted to request information through 31 October 1996.

## B. *Relevancy of Requested Information*

Roadway argues that the race and gender information requested by the EEOC is not relevant to the allegations contained in the Charge. Roadway claims gender information is not relevant with respect to promotion into sales and upper management since the Charge specifically relates to race discrimination. Likewise, the race information is urged as not relevant with respect to hiring for operative and laborer positions since that charge specifically relates to gender discrimination. (Resp't Mot. 15–6).

The EEOC only is entitled access to evidence which is "relevant to the Charge under investigation." 42 U.S.C. § 2000e–8(a). The Sixth Circuit has held that information concerning job classifications, other than that of the complainant, is relevant because it may show a pattern of the same type of discrimination in the workplace. *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir.1969); *EEOC v. Cambridge Tile Manufacturing Co.,* 590 F.2d 205 (6th Cir.1979).

In *Blue Bell Boots,* several individuals filed charges with the EEOC against their employer alleging race discrimination. The EEOC issued a subpoena requesting records concerning every employee in every category of employment within the company. The Defendant argued that records concerning other employees in unrelated jobs were not relevant to the investigation and refused to provide the information. The EEOC brought a motion to enforce the subpoena. The District Court granted the EEOC's motion and gave it access to all employee records. The Defendant appealed. *Blue Bell Boots,* 418 F.2d at 356.

On appeal the Sixth Circuit affirmed the lower court. The Court held that an employer's "pattern of action" was relevant to an EEOC investigation for discrimination. Specifically, the court stated:

> We consider an employer's "pattern of action" relevant to the Commission's determination of whether there is reasonable cause to believe that the employer has practiced racial discrimination. Discrimination on the basis of race is by definition class discrimination, and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors.

*Id.* at 358.

In 1984, the Supreme Court decided a case involving enforcement of an EEOC subpoena. *Shell Oil,* 466 U.S. at 68–69, 104 S.Ct. 1621. In its decision, the Court cited *Blue Bell Boots* for the proposition that courts should generously construe the term "relevant" and afford the EEOC access to virtually any material that might cast light on the allegations against the employer. *Id.*

Based on the reasoning set forth in *Blue Bell Boots* this Court finds the information sought by the EEOC is relevant.[1] The first allegation in the Commis-

---

1. The EEOC argues that race and gender information is relevant to conduct a proper statistical analysis. In support of this position the EEOC submits an affidavit from the

Director of Research and Analytical Service who says that without complete race and gender information an employer can statistically mask the occurrence of discrimination.

sioner's Charge is that Roadway racially discriminated against African–Americans by failing to promote them into sales and upper-level management positions. Under the reasoning of *Blue Bell Boots,* the EEOC is entitled to look at information concerning the practice of hiring African–Americans in all positions within the company, including those of operative and laborer, to determine whether there is a pattern of action based on racial discrimination. *Blue Bell Boots,* 418 F.2d at 358. The second allegation in the Commissioner's Charge is that Roadway discriminated against women by failing to hire them for operative and laborer positions. The EEOC is likewise entitled to look at information concerning the practice of hiring women in all positions within the company, including those of sales and upper-level management, to determine whether there is a pattern of action based on gender discrimination. *Id.*

C. *Undue Burden*

Roadway has argued that forcing it to provide information past the date the Charge was issued would place a burden on the company as it would have to expend time and money to assemble the requested data. (Resp't Mot. 37.)

 Courts will not find undue burden in an action to enforce an EEOC subpoena unless compliance would threaten to disrupt unduly or seriously hinder the normal operations of an employer's business. *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir.1986); *EEOC v. Citicorp Diners Club,* 985 F.2d 1036, 1040 (10th Cir.1993). The cost of compliance is no defense to enforcement of a subpoena unless it is "unduly burdensome in light of

the company's normal operating costs." *Maryland Cup Corp.,* 785 F.2d at 479. The party objecting to the subpoena has the obligation to establish the undue burden. *EEOC v. Quad/Graphics, Inc.,* 63 F.3d 642, 648–49 (7th Cir.1995).

 Roadway has simply made a broad allegation that it will have to spend extensive time and money. Applying the above standards, this Court finds Roadway's argument to be without merit.

III. *Conclusion*

For the foregoing reasons, the Petitioner's Order To Show Cause (Docket No. 1) is granted.

IT IS SO ORDERED.

*JUDGMENT ENTRY*

This Court, having previously entered its memorandum of opinion and order granting Petitioner's Order To Show Cause seeking enforcement of a subpoena, hereby enters judgment in favor of Petitioner Equal Employment Opportunity Commission and against Respondent Roadway Express, Inc. Respondent shall pay costs.

---

(Pet'r Mot. at 8–11.) Roadway deposed the Director who submitted the affidavit. During the deposition the Director admitted that he did not know anything about the case nor had he looked at any documentation before submitting his affidavit. Moreover, the Director acknowledged that sometimes it would be impossible to statistically mask discrimination and that he did not know whether it had or even could occur in this case. (Resp't Mot. at

22–29.) Based on the admissions of the Director, this Court finds the EEOC's theory of statistical masking to be without merit. Nevertheless, the requested race and gender information is still relevant as it can show a pattern of discrimination in the workplace. *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir.1969); *EEOC v. Cambridge Tile Manufacturing Co.,* 590 F.2d 205 (6th Cir.1979).