*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0280P (6th Cir.)
File Name: 01a0280p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
      *Petitioner-Appellee,*

    v.

ROADWAY EXPRESS, INC.,
      *Respondent-Appellant.*

No. 00-3092

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-MC-00007—Lesley Brooks Wells, District Judge.

Argued: January 25, 2001

Decided and Filed: August 23, 2001

Before: JONES, BATCHELDER, and CLAY, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Barbara J. Leukart, JONES, DAY, REAVIS &
POGUE, Cleveland, Ohio, for Appellant. Caren I. Friedman,
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Washington, D.C., for Appellee. **ON BRIEF:** Barbara J.
Leukart, James A. Rydzel, JONES, DAY, REAVIS &

1

POGUE, Cleveland, Ohio, for Appellant. Caren I. Friedman, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

_____

**OPINION**

_____

NATHANIEL R. JONES, Circuit Judge.  In November 1994, the Equal Employment Opportunity Commission ("EEOC"or "Commission") issued a Commissioner's Charge against Roadway Express, Inc. ("Roadway Express" or "Roadway") alleging that it had engaged in and continues to engage in a pattern and practice of race and sex discrimination.  The EEOC subsequently issued a subpoena requesting that Roadway Express supply certain hiring and promotions information.  Roadway turned over some of the requested materials, but refused to supply other documents.  In February 1999, the EEOC filed an application for an Order to Show Cause seeking to enforce the subpoena against Roadway Express.  The district court granted the EEOC's Order to Show Cause.  Roadway Express now appeals that order.  For the reasons stated below, we **AFFIRM** the district court's decision.

### I.  Facts

On November 3, 1994, the EEOC issued a Commissioner's Charge against Roadway Express.  The charge alleged that "since at least July 27, 1991," Roadway has engaged in and continues to engage in a pattern and practice of race and sex discrimination covering a ten-state area in violation of Title VII of the Civil Rights Act of 1964.  Specifically, the charge alleged unlawful discriminatory practices including, but not limited to:

1.  Failing and/or refusing to promote Blacks because of their race (Black) into sales and upper-level management positions;

2.  Failing and/or refusing to hire individuals based on their sex (female) into operative and labor positions;

3.  Maintaining a hostile work environment and/or failing to provide a working environment free from racial and sex based harassment, intimidation, and insults; and

4.  Maintaining policies and practices and other terms and conditions of employment which discriminate against individuals based on their race (Black) and/or sex (female).

J.A. at 33.

Two weeks after the EEOC filed the charge, it issued a seven page request for information. Roadway turned over extensive documentation. On April 12, 1996, the EEOC requested additional information. In response, Roadway supplemented its responses, but refused to provide information concerning the gender of individuals promoted into sales and upper-level management positions or the race of individuals hired for operative and labor positions.

On July 22, 1996, the EEOC issued a subpoena setting forth eleven requests for information covering the period from July 27, 1991 to the present. This subpoena included requests for (1) information about the applications of individuals who applied for operative and laborer positions (Request #8); (2) information about individuals hired into operative and laborer positions (Request #9); and (3) information about the race and gender of individuals in sales, upper-level management and operative and labor positions (Request #11). In response, Roadway filed a petition to revoke or modify the subpoena with the EEOC. The EEOC curtailed requests #8 and #9 to target only five Roadway Express facilities, instead of the original ten-state area. The EEOC also modified request #11 so that Roadway would only have to provide race and gender information concerning employees whose records they had already provided.

Roadway responded by sending application and hiring documents for the period from July 27, 1991 through November 3, 1994, the day the EEOC's original charge was issued. However, Roadway refused to send any information beyond the date of the charge and continued its refusal to provide race information regarding the hiring of operators and laborers, and gender information regarding promotions to sales and upper-level management positions. The EEOC wrote to Roadway requesting the missing race and gender information along with the remainder of the application and hiring documents from November 3, 1994 to the present. Later, in an effort to reach a compromise, the EEOC limited its request to promotion and hiring documents through October 31, 1996, approximately two years after the charge was issued. Roadway continued to withhold the requested information.

In February 1999, the EEOC filed an Order to Show Cause to compel compliance with the subpoena. Before the district court, Roadway Express admitted that the EEOC's charge against it was adequate. However, Roadway argued that since the charge only alleged a failure to hire women as operators and laborers and a failure to promote blacks to sales and upper management positions, the information that the EEOC requested regarding the promotion of women to sales and upper level management positions, and the hiring of blacks as operators and laborers was not relevant to the EEOC's charge. Accordingly, Roadway asserted that the EEOC had no right to that information.

The district court disagreed. The Court acknowledged that the EEOC is only entitled to access evidence which is "relevant to the Charge under investigation." *EEOC v. Roadway Express*, *Inc.*, 75 F. Supp. 2d 767, 771 (N.D. Ohio 1999) (quoting 42 U.S.C. §2000e-8(a)). However, it pointed out that courts have generously construed this relevancy requirement and "have afforded the EEOC access to virtually any material that might cast light on the allegations against the employer." *Id*. (citing *EEOC v. Shell Oil Co.,* 466 U.S. 54, 68-69 (1984)). In fact, the court noted that in the case of

47. Evidence of hiring and promotion practices prior to the time of the charge provide context to allow the EEOC to determine whether alleged discrimination actually took place. *Id.* at 47. As this Court noted in *Ford*, "[c]omparative information . . . is absolutely essential to a determination of discrimination." *Id*. Similarly, this Court has also enforced EEOC subpoenas that sought post-charge information. *See EEOC v. Roadway Express, Inc.,* 750 F.2d 40, 43 (6th Cir. 1984), *aff'g* 580 F.Supp. 1063, 1064 (W.D. Tenn. 1984). Like pre-charge data, this information provides the context that is necessary to evaluate whether discrimination occurred.

As noted above, the EEOC's original charge accused Roadway with numerous violations of Title VII beginning in "at least July 27, 1991," and continuing through November 3, 1994, the date of the charge. Assuming that the scope of this charge is limited to these dates, the charge would still allege over three years of discrimination on the part of Roadway Express. Given the broad temporal scope of this charge, we do not believe that the district court abused its discretion in ordering Roadway Express to produce hiring and promotions information through October 31, 1996. At the very least, this two years of additional information will provide comparative data, which our *Ford* decision noted is relevant because it is "essential to determination of discrimination." *Ford,* at 47-48.

### III. Conclusion

For the reasons stated above, we **AFFIRM** the district court's decision ordering Roadway Express to comply with the EEOC's July 22, 1996 subpoena.

First, we are not convinced that the *Shell* decision prohibits the EEOC from charging ongoing violations. Aside from the fact that the Court used the past tense to describe the temporal scope requirement, there is no direct indication that it intended to prohibit the EEOC from charging an ongoing violation. Moreover, there is nothing in the logic or the rationale of the *Shell* decision that would lead to the conclusion that charges of ongoing violations are impermissible.[1]

Furthermore, even if Roadway is correct that the scope of the EEOC charge does not extend beyond the date the charge was issued, this would not necessarily confine the EEOC's investigation to evidence of discrimination that occurred before the date of the charge. As noted above, the Supreme Court has held that Title VII gives the EEOC very broad powers of investigation and affords the EEOC access to "virtually any material which might cast light on the allegations against the employer." *See Shell Oil,* 446 U.S. at 68-69.

Although the relevance requirement places some temporal limits on the scope of the inquiry, it is not uncommon for the EEOC to receive information concerning events that took place up to three or four years before the date when the discrimination allegedly took place. *See Ford,* 26 F.3d at 46-

---

[1] In considering the requirements for an adequate charge the court explored the structure of Title VII generally and the legislative policies behind 706(b). The court noted that the charge did anchor the EEOC's investigatory powers, since they are only entitled to evidence that is " relevant" to the charge. However, the court also pointed out that the primary legislative purpose of the charge is to notify employers about the nature of accusations against them. More specifically, the purpose of notice includes: (1) giving fair notice of the allegations, (2) informing the employer of when the suspected discrimination took place so it can undertake its own inquiry into employment practices and voluntarily comply with substantive provisions of Title VII, and (3) alerting the employer to the range of personnel records that might be relevant to the agency's investigation and ensuring they are not inadvertently destroyed. The charge was not envisioned as a substantive constraint on the agency's investigative authority. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 79 (1984).

*Blue Bell Boots, Inc. v. EEOC*, the Sixth Circuit specifically held that information concerning job classifications, other than that of the complaint, is relevant because it may show a pattern of discrimination in the workplace. *Id*. (citing *Blue Bell*, 418 F.2d 355, 358 (6th Cir. 1969)); *see also EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979).

Based on the reasoning in *Blue Bell*, the district court held that the EEOC is entitled to look at information concerning the hiring of African-Americans in all positions, including operative and laborer, to determine if there is a pattern of action based on racial discrimination. *Id*. at 772. The Court also held that the EEOC is entitled to look at information concerning the practice of hiring women to all positions within the company, including those of sales and upper-level management, to determine if there is a pattern of action based on gender discrimination. *Id.* Accordingly, on December 15, 1999, the district court ordered Roadway Express to comply with the EEOC's subpoena. *Id.* Roadway now appeals the district court's order. We review the district court's decision to enforce the EEOC's administrative subpoena for abuse of discretion. *See NLRB v. Detroit Newspapers*, 185 F.3d 602, 605 (6th Cir. 1999).

## II. Discussion

Title VII requires the EEOC to investigate complaints of employment discrimination based on race and gender. An individual or the Commissioner may file a charge if he or she believes that an employer has engaged in a pattern of discriminatory practice. In *EEOC v. Shell Oil Company*, the Supreme Court set forth a four part test to determine the adequacy of a charge. The Court noted that a charge should contain: (1) the groups of persons believed to have been discriminated against; (2) the categories of employment positions from which they have been excluded; (3) the methods by which the discrimination may have been effected; and (4) the periods of time in which the EEOC expects discrimination to have been practiced. 466 U.S. at 73. Once an adequate charge has been issued, the EEOC has authority

to serve subpoenas to gain "access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is *relevant* to the charge under investigation."    42 U.S.C. § 2000e-8(a) (emphasis added).

## A.  Scope of Investigation

In this case, Roadway Express argues that the EEOC is not entitled to the information that it seeks because this information is not relevant to the charge the EEOC filed.  As noted above, Roadway Express claims that since the charge only alleged failure to hire women as operators and laborers and the failure to promote blacks to sales and upper management positions, the information that the EEOC requested regarding the promotion of women to sales and upper level management positions and the hiring of blacks as operators and laborers was not relevant to the EEOC charge. We disagree.

As the district court noted, this Court's *Blue Bell* decision specifically held that evidence that an employer discriminated in one situation or employment position is relevant to a determination of whether the employer discriminated in other circumstances.  418 F.2d  at  358.  In *Blue Bell*, several individuals filed charges with the EEOC alleging that their employer discriminated against them on the basis of their race.  The EEOC issued a subpoena requesting records concerning every employee in every category of employment within the company.  The defendant argued that records concerning other employees in unrelated jobs were not relevant to the investigation and refused to provide the information.  The district court ordered that the defendant comply with the EEOC's subpoena giving the EEOC access to all employee records.

The Sixth Circuit affirmed the district court's order, holding that an employer's "pattern of action" was relevant to an EEOC investigation for discrimination. *Id*. at 358. The Court stated:

As noted above, the EEOC brought its initial charge against the Roadway Express on November 3, 1994.  In this charge, the EEOC set out the relevant information including periods of time in which the EEOC expected discrimination to have been practiced.  The EEOC stated that "since at least July 27, 1991, Roadway Express has violated and continues to violate . . . Title VII  . . . by discriminating against applicants and employees because of their race and/or sex."  J.A. at 33.  On July 22, 1996, the EEOC issued a subpoena requesting information from July 27, 1991 to the present.  Roadway produced information up until November 3, 1994, but refused to produce any information beyond the date of the charge.  In an attempt to compromise, the EEOC limited its request to information prior to October 31, 1996.  The district court granted the EEOC's Order to Show Cause ordering Roadway to produce evidence up to October 31, 1996.

Roadway argues that the district court erred because the EEOC has no authority to request post-charge information. In support of this argument, Roadway once again cites *EEOC v. Shell Oil*, which sets out the requirements for an EEOC charge.  As noted above, the fourth requirement is that "the Commissioner should identify [insofar as he is able] . . . the periods of time in which he suspects discrimination to have been practiced." *Shell Oil*, 466 U.S. at 73.  Roadway argues that since the Supreme Court defined the temporal scope requirement in the past tense, a charge may not include anticipated acts of discrimination.   On the basis of this interpretation, Roadway argues that even though the EEOC's present charge contemplates ongoing violations that began in 1991, the scope of the charge may not extend beyond November 3, 1994 (the date the charge was issued). Moreover, Roadway insists that the scope of the charge proscribes the EEOC's investigatory authority.  Appellant asserts that since a charge may not allege ongoing offenses and the scope of the charge is limited to the date of the charge, the EEOC has no investigative authority to subpoena information beyond the date of the charge.  We are not persuaded by these arguments.

Finally, Roadway claims that the generous relevance standard employed in *Blue Bell* is not applicable to this case because that standard only applies in cases when charges are brought by individuals, and does not apply to charges brought by the EEOC. In support of this argument, Roadway cites a series of cases in which federal courts have applied a generous standard of relevancy to claims brought by individuals. *See EEOC v. University of New Mexico*, 504 F.2d 1296, 1303-04 (10th Cir. 1974); *EEOC v. Maryland Nat'l Bank*, 42 Fair Empl. Pra. Case 1094, 1096 (D. Md. 1986); *Graniteville v. EEOC*, 438 F.2d 32, 41 (4th Cir. 1971). Of course, the fact that courts have applied a generous relevancy standard to cases in which individuals brought claims against their employers does not prove that EEOC investigations are subject a tougher relevancy standard.

To the contrary, in the *Shell* case, the Supreme Court specifically observed that the 1972 amendments to Title VII eliminated a provision that subjected the Commissioner to a more rigorous standard. The Supreme Court surmised that "the only plausible explanation for that change is that Congress wished to place a Commissioner on the same footing as an aggrieved private party: neither was held to any prescribed level of objectively verifiable suspicion at the outset of the enforcement procedure." *Shell Oil,* 466 U.S. at 76. As noted above, the Court articulated a broad standard of relevance in the *Shell* case, which itself involved a Commissioner's charge. *Id.* at 57.

Accordingly, we reject Appellant's arguments that the *Blue Bell* decision is no longer good law, and its assertion that *Blue Bell* is not relevant to the instant case. The district court employed the correct relevancy standard and did not abuse its discretion in ordering that Roadway turn over hiring and promotion information requested by the EEOC.

## B.  Adequacy of Post-Charge Investigation

On appeal, Roadway Express also argues that the district court abused its discretion by ordering it to turn over evidence that does not fall within the time-frame of the EEOC charge.

We consider an employer's "pattern of action" relevant to the Commission's determination of whether there is reasonable cause to believe that the employer has practiced racial discrimination. Discrimination on the basis of race is by definition class discrimination, and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors.

*Id.*

The *Blue Bell* case clearly holds that the EEOC is entitled to the evidence that it has requested even though this evidence focuses on the existence of patterns of racial discrimination in job classifications or hiring situations other than those that the EEOC's charge specifically targeted. The employer's pattern of action provides context for determining whether discrimination has taken place. *See Blue Bell*, 418 F.2d at 358.

In this case, the EEOC charged Roadway Express with numerous discriminatory practices including (1) refusing to hire women, (2) refusing to promote blacks, (3) maintaining a racially and sexually hostile work environment, and (4) maintaining policies and practices which discriminate against individuals based on their race and sex. Furthermore, the EEOC charge alleged that these practices were widespread, covering a ten-state area. Given the systemic nature of these allegations, there is no doubt that evidence of racial discrimination in the hiring of operators and laborers "might cast light" on the EEOC's inquiry into racial discrimination in promotion of employees to sales and upper-level management positions, the maintenance of a racially hostile work environment, and policies which discriminate on account of race. *See Shell Oil*, 466 U.S. at 68-69 ("[C]ourts . . . have afforded the Commission access to virtually any material that might cast light on the allegations against the employer."). Similarly, evidence of gender discrimination in

the promotion of employees to sales and upper-level management positions, might certainly "cast light on" the inquiry into sexual discrimination in the hiring of operators and laborers, the maintenance of a sexually hostile work environment, and policies which discriminate against women. *See id*. Accordingly, the information that the EEOC has subpoenaed is "relevant" to the charges against Roadway Express.

On appeal, Roadway posits several arguments attacking the precedential value of the *Blue Bell* decision and its applicability to the instant case. First, Roadway argues that the generous relevancy standard articulated in the *Blue Bell* decision has been overruled by the Supreme Court's decision in *EEOC v. Shell Oil Co.,* 466 U.S. 54 (1984), and the Sixth Circuit's decision in *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44 (6th Cir. 1994). According to Roadway, these cases, which prohibit a court from applying a rubber stamp analysis to EEOC requests for information, cast aside *Blue Bell's* generous relevancy standard in favor of a more parsimonious standard.

It is true that the Supreme Court's *Shell* opinion indicated that the relevancy standard places some limitation on the scope of the EEOC's investigative authority and that courts should not apply a rubber stamp analysis when assessing relevancy. However, it is simply not the case that *Shell* cast doubt upon the relevancy standard applied in *Blue Bell*. To the contrary, the *Shell* opinion explicitly recognized that the courts have "generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer," and cited *Blue Bell* as an example of this practice. *Shell Oil,* 466 U.S. at 68-69 & n.20. In fact, the Court pointed out that Congress implicitly endorsed this generous relevancy standard in 1972 when it decided not to alter the EEOC's statutory authority. *Id*. at 69 & n.21.

Similarly, the Sixth Circuit did not overrule *Blue Bell* in *EEOC v. Ford Motor Credit*. Although the *Ford* decision

held that the EEOC is not entitled to whatever material the EEOC deems relevant, the decision also quoted the generous relevancy standard mentioned in *Shell* and agreed that Congress intended the EEOC to have "broad access" to information. *Ford*, 26 F.3d at 47. Recognizing that "employment context is relevant to a charge of employment discrimination," the Court ordered that the EEOC be given access to a wide array of hiring and promotion information even though the EEOC's charge was based on a female worker's claim that she had been denied a promotion to salary grade six and a preliminary investigation that revealed a scarcity of women promoted beyond grade 5. *Id.* Contrary to Roadway's assertions, this decision is fundamentally consistent with our holding in *Blue Bell*.

Alternatively, Roadway argues that the *Blue Bell* case is no longer good law because it was based on the premise that "[d]iscrimination on the basis of race is by definition class discrimination," *Blue Bell*, 418 F.3d at 358, and that this legal premise was rejected by the Supreme Court in *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). We disagree. The Supreme Court's holding regarding the certification of class actions in the *Rodriguez* case has no bearing on this Circuit's decision in *Blue Bell*. In *Rodriguez*, the plaintiffs filed suit against their employers and union, alleging that provisions of a collective bargaining agreement violated Title VII. *Id.* at 398. The issue before the Supreme Court was whether the Fifth Circuit erred in certifying this case as a class action. The Supreme Court held that based on the facts of that case, the named class representatives were not proper class representatives because they did not adequately represent the interests of the entire class. *Id.* at 403. Therefore, the *Rodriguez* case is not pertinent to the standard of relevance in a subpoena enforcement action and does not cast any doubt on the viability of the *Blue Bell* decision. In fact, the Supreme Court's *Shell* decision, discussed above, cited *Blue Bell* as a viable precedent seven years after the *Rodriguez* decision was handed down. *See Shell Oil,* 466 U.S. at 69 n.20.