RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
                          *Plaintiff-Appellee*,

                                                                No. 16-2132

          *v.*

UNITED PARCEL SERVICE, INC.,

                          *Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-mc-50588—Arthur J. Tarnow, District Judge.

Decided and Filed:  June 9, 2017

Before:  NORRIS, MOORE, and STRANCH, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Bonnie Mayfield, DYKEMA GOSSETT, PLLC, Bloomfield Hills, Michigan, Jill M. Wheaton, DYKEMA GOSSETT, PLLC, Ann Arbor, Michigan, for Appellant.  Julie L. Gantz, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  This case concerns the scope of evidence that Plaintiff-Appellee Equal Employment Opportunity Commission ("EEOC") may obtain in investigating charges of discrimination.  Sinisa Matovski, an operations manager for Defendant-Appellant United Parcel Service, Inc. ("UPS") who has a disability, filed an EEOC charge

claiming that UPS discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990 ("ADA"). In particular, Matovski claims that UPS published confidential medical information about him and other employees on its intranet page. The EEOC began an investigation into Matovski's claims, which resulted in a subpoena that requested information about how UPS stored and disclosed employee medical information. UPS opposed the subpoena, claiming that the requested information was irrelevant to Matovski's charge. This resulted in the EEOC filing an application to enforce the subpoena. The district court granted the application, and UPS has appealed. Because the information that the EEOC requests "relates to unlawful employment practices" covered by the ADA, 42 U.S.C. § 2000e-8(a) (2012), we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The origin of this appeal is an EEOC charge that Matovski filed on March 25, 2014. R. 1 (Mar. 25, 2014 Charge) (Page ID #30). The first portion of Matovski's charge claims that UPS violated 42 U.S.C. § 12112(d), which prohibits discrimination on the basis of "medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). Of particular concern was a September 2013 request for medical leave that UPS published on its Health and Safety intranet site. R. 1 (Mar. 25, 2014 Charge) (Page ID #30). Matovski requested that his information, which included his "condition and symptoms and basis for [his] leave," be removed from the site. *Id.* However, "it remain[ed] accessible to other UPS employees as of" February 16, 2015. *Id.*; R. 1 (Feb. 16, 2015 Charge) (Page ID #32). Matovski filed an amended EEOC charge on February 16, 2015, which stated in addition, "I am aware that all other employees subject to Health and Safety incident action/reports have had their confidentiality breached in the same manner as me." R. 1 (Feb. 16, 2015 Charge) (Page ID #32).

Matovski also claimed that, since he disclosed his disability and complained of discrimination, he had "been subjected to heightened scrutiny of [his] performance and subjected to negative treatment that [his] peers who do not have disabilities do not face." R. 1 (Mar. 25, 2014 Charge) (Page ID #30). Specifically, he claimed that "[i]n the spring of 2013 and again in October of 2013, [he] complained to Human Resources about what [he] believed to be

discriminatory treatment based on [his] disability and need for accommodation, and since [he] raised these concerns, the negative treatment of [him] has accelerated." *Id.*

As part of its investigation into these charges, the EEOC issued a subpoena for five pieces of evidence, three of which are at issue in this appeal.[1] The first request was for "a copy, in Excel, or Comma Separated Values Format (CSV), of the year end 'SCS-CSI H & S' report for the years 2013 to the present." R. 1 (Subpoena) (Page ID #35). This report contains information about employee injuries and accidents, including "the nature and location of the injury and accident, the injury type, whether the injury or accident is an OSHA type event, the District of the employee, business unit of the employee, and when not identified as a privacy case, information such as the employee's name, and employee identification number." R. 1 (UPS's Pet. at 1–2) (Page ID #41–42). The EEOC estimates that "there could be six, seven hundred people just on . . . one worksheet within this Excel file that contains multiple worksheets." R. 11 (Mot. Hr'g Tr. at 8) (Page ID #124). The second request was for "a copy of the 'privacy case' criteria and all documents regarding its implementation and creation." R. 1 (Subpoena) (Page ID #35). The EEOC explained that it seeks this information "to understand how UPS is determining what is a privacy case. Are they acknowledging theoretically that some of this is confidential information that shouldn't be shared with all managerial employees throughout the country[?]" R. 11 (Mot. Hr'g Tr. at 16) (Page ID #132). The third request was for "a copy of the 'RiskConsul' Oracle Database in Ecel [sic] or CVS [sic] format that replaced the 'SCS-CSI H & S' report, from the date of implementation to the present." R. 1 (Subpoena) (Page ID #35).

UPS petitioned the EEOC to modify the subpoena, arguing that some of the requested information was irrelevant and burdensome, R. 1 (UPS's Pet. at 4) (Page ID #44), but the EEOC denied UPS's petition, R. 1 (EEOC's Determination on UPS's Pet. at 1) (Page ID #56). The EEOC then filed in the United States District Court for the Eastern District of Michigan its application for an order to show cause why an administrative subpoena should not be enforced. R. 1 (Appl.) (Page ID #1–24). After holding a hearing on the EEOC's application, R. 11 (Mot.

---

[1]The EEOC withdrew the fourth and fifth requests after "UPS admitted that all managers in the country have access to [the report of its employees' injuries]." R. 5 (Pl.'s Reply to Resp't's Resp. to the Appl. at 4) (Page ID #107).

Hr'g Tr.) (Page ID #117–36); R. 14 (Nov. 3, 2016 Order) (Page ID #148–49), the district court ordered UPS to comply with the first three requests in the EEOC's subpoena, R. 7 (July 21, 2016 Order) (Page ID #111–12), "for the reasons that the EEOC has put on the record and in their brief," R. 11 (Mot. Hr'g Tr. at 19) (Page ID #135). This appeal follows. R. 8 (Notice of Appeal) (Page ID #113–14). The district court had jurisdiction pursuant to 29 U.S.C. § 161(2), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

"A subpoena enforcement proceeding is a summary process designed to decide expeditiously whether a subpoena should be enforced." *EEOC v. Roadway Express, Inc.* (*Roadway Express I*), 750 F.2d 40, 42 (6th Cir. 1984). Generally speaking, the purpose is not to decide the merits of the underlying claim. *Id.* We review "a district court's decision to enforce an EEOC subpoena . . . for abuse of discretion." *McLane Co. v. EEOC*, 581 U.S. ——, 137 S. Ct. 1159, 1170 (2017); *EEOC v. Roadway Express, Inc.* (*Roadway Express II*), 261 F.3d 634, 638 (6th Cir. 2001).

### B. Relevance

"Once an adequate charge has been issued, the EEOC has authority to serve subpoenas to gain 'access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is *relevant* to the charge under investigation.'" *Roadway Express II*, 261 F.3d at 638 (quoting 42 U.S.C. § 2000e-8(a)). Although "the relevancy standard places some limitation on the scope of the EEOC's investigative authority[,] . . . courts have 'generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer.'" *Id.* at 639 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984)). Thus, § 2000e-8(a)'s "relevancy limitation does not . . . force the EEOC only to review evidence concerning the specific charge." *Roadway Express I*, 750 F.2d at 43; *EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979) ("Notions of relevancy at the investigatory stage are very broad, and so long as the EEOC is not wandering into wholly unrelated areas, . . . we hold that the Commission has the

power to investigate and thus to subpoena documents concerning any employer practice which may shed light on the discrimination charged.").

As an illustration of this generous construction, we have held in the Title VII context that "the EEOC is entitled to . . . evidence [that] focuses on the existence of patterns of racial discrimination in job classifications or hiring situations other than those that the EEOC's charge specifically targeted." *Roadway Express II*, 261 F.3d at 639. We see no reason to hold differently with respect to discrimination on the basis of disability, keeping in mind that "discrimination as referred to in [the ADA] shall include medical examinations and inquiries," 42 U.S.C. § 12112(d)(1). Thus, so long as a charge alleges unlawful use of medical examinations and inquiries, evidence of patterns of such unlawful use is "relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a); *Roadway Express II*, 261 F.3d at 639.

UPS argues that "[t]he EEOC is only entitled to information regarding similarly-situated employees." Reply Br. at 4. However, under the standard described above, there is no such restriction under § 2000e-8(a). In fact, in *Roadway Express II*, we deemed evidence to be relevant despite the fact that it concerned employees who were decidedly not similarly situated to the employee who was the subject of the EEOC charge; whereas "the charge only alleged failure to hire women as operators and laborers and the failure to promote blacks to sales and upper management positions," we held that evidence "regarding the promotion of women to sales and upper level management positions and the hiring of blacks as operators and laborers" was nevertheless relevant. 261 F.3d at 638. The true test of relevance is not whether the information is about similarly situated employees, but whether the evidence "provides context for determining whether discrimination has taken place." *Id.* at 639.

With these principles in mind, we hold that the district court did not abuse its discretion in this case. The first and third requests, which were for the databases that stored and allegedly disclosed employee medical information, are directly relevant to Matovski's charge. Matovski claims that UPS violated the ADA's confidentiality provision by publishing his request for medical leave on "on the company's Health and Safety intranet site." R. 1 (Mar. 25, 2014 Charge) (Page ID #30) (citing 42 U.S.C. § 12112(d)). He also notes in his amended charge that "all other employees subject to the Health and Safety incident action/reports have had their

confidentiality breached in the same manner as me." R. 1 (Feb. 16, 2015 Charge) (Page ID #32). Matovski's charge thus directly implicates the databases that UPS uses to store and potentially disclose employee medical information. The district court did not abuse its discretion in finding such reports relevant to Matovski's charge.

UPS argues in response that the EEOC's requests are overbroad because the information contained in the SCS-CSI H & S report and RiskConsul Oracle Database contain information about other employees from other regions in the United States and Canada and that Matovski's information never appeared on the RiskConsul Oracle Database. However, the breach of confidentiality that Matovski describes in his amended charge is not limited to himself; he claims that "all other employees subject to Health and Safety incident action/reports have had their confidentiality breached in the same manner as me." R. 1 (Feb. 16, 2015 Charge) (Page ID #32). Moreover, the EEOC is entitled to evidence that shows a pattern of discrimination other than the specific instance of discrimination described in the charge. *See Roadway Express II*, 261 F.3d at 639. "A company's business practices are not so compartmentalized as the defendant in this case would contend"; UPS is not shielded from the EEOC's subpoena power merely because it began disclosing employee medical information on a new database. *See Cambridge Tile Mfg. Co.*, 590 F.2d at 206. Therefore, the district court did not abuse its discretion in finding that reports with information about other employees are relevant to Matovski's charge.

UPS also argues that Matovski's amended charge is not valid because it "appears to have been amended for an illegitimate purpose—to obtain documents that the subpoena otherwise could not reach." Appellant's Br. at 16. However, UPS did not raise this argument below. Therefore, it is forfeited. *See Lucaj v. FBI*, 852 F.3d 541, 547 n.4 (6th Cir. 2017). Nevertheless, we note that even if the amended charge were invalid, databases that unlawfully disclose medical information of other employees would reflect a pattern of discrimination that "may well justify an inference that the practices complained of here were motivated by . . . factors [in violation of the ADA]." *Roadway Express II*, 261 F.3d at 638–39 (quoting *Blue Bell Boots, Inc.*, 418 F.2d 355, 358 (6th Cir. 1969)). Therefore, the first and third requests are relevant to either of Matovski's charges.

The district court also did not abuse its discretion in finding that UPS's "privacy case" criteria were relevant to Matovski's charge. The explanation that the EEOC provided, and which the district court adopted, R. 11 (Mot. Hr'g Tr. at 19) (Page ID #135), is that the "privacy case" criteria may reveal an acknowledgment on the part of UPS that some information in the databases was "confidential information that shouldn't be shared with all managerial employees throughout the country." *Id.* at 16 (Page ID #132). Showing what UPS knew to be confidential and what it believed not to be confidential "provides context for determining whether discrimination has taken place." *Roadway Express II*, 261 F.3d at 639. It is not an abuse of discretion for the district court to deem evidence regarding such knowledge to be relevant.

UPS argues in response that the EEOC's request is overbroad because it "provides no temporal scope." Appellant's Br. at 23–24. However, the relevance of the "privacy case" criteria is not dependent on when UPS developed the criteria. Regardless of when UPS developed the criteria, this piece of evidence may provide insight into how UPS categorizes information as confidential. This is relevant to Matovski's charge that UPS disclosed confidential medical information in violation of the ADA. Therefore, the EEOC shall have access to it. *See* 42 U.S.C. § 2000e-8(a).

\*        \*        \*

Finally, although the bulk of UPS's argument is focused on the relevance of the requested information, UPS also argues that the request is "unduly burdensome." Appellant's Br. at 11. It is true that courts "*may not enforce* an administrative subpoena unless the request seeks relevant material and is not unduly burdensome." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (citing *Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (1990); *Shell Oil Co.*, 466 U.S. at 68–69, 72–73). However, UPS has not identified how producing the requested pieces of evidence would be unduly burdensome. In fact, the only evidence in the record on this point suggests that it would not be burdensome for UPS to comply with the subpoena; when asked how difficult it would be for UPS to provide the requested information, both parties acknowledged that the information could be transmitted electronically. Because UPS has not shown that the subpoena is burdensome in any material way, the district court did not abuse its discretion in ordering UPS to comply with the subpoena.

## III. CONCLUSION

In light of the generous construction we give to "relevant" evidence, *Roadway Express II*, 261 F.3d at 638, we hold that the district court did not abuse its discretion in directing UPS to comply with the EEOC's subpoena. Accordingly, we **AFFIRM** the judgment of the district court.