EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Appellee,

v.

UNIVERSITY OF PITTSBURGH,
Appellant.

No. 80–1854.

United States Court of Appeals,
Third Circuit.

Argued Nov. 3, 1980.

Decided March 17, 1981.

James J. Restivo, Jr. (argued), Diane W. Perer, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

Joel M. Cohn (argued), Vella M. Fink, Lutz Alexander Prager, Leroy D. Clark, Joseph T. Eddins, Jr., Washington, D. C., for appellee.

Before HUNTER, GARTH and HIGGIN-BOTHAM, Circuit Judges.

OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

Appellant, the University of Pittsburgh, appeals from the district court's order enforcing a subpoena duces tecum issued by

the Equal Employment Opportunity Commission (EEOC). The EEOC requested the subpoena pursuant to an investigation of alleged unlawful discrimination by the University against female faculty members in the School of Nursing. The district court held that the issuance of the subpoena was within the power of the Commission and dismissed the University's counterclaim by sustaining the EEOC regulations that permit disclosure of investigative files to the charging party. We affirm the district court's enforcement order and in light of the Supreme Court's recent decision in *EEOC v. Associated Dry Goods*, —— U.S. ——, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981) authorize release of the EEOC's investigative file to the charging party.

FACTS

On July 8, 1977, Margaret F. Carroll, Acting Executive Director of the American Nurses Association, ("ANA") filed a charge of sex discrimination with the EEOC. The charge alleged that the University of Pittsburgh discriminated against women faculty members by, *inter alia*, paying them lower monthly salaries than that paid to male faculty.[1]

The EEOC began its investigation with a request for information concerning the sex, salary levels, experience, and job responsibilities of the faculty in four of the fifteen professional schools on the University's Pittsburgh campus: the Schools of Nursing, Pharmacy, Health Related Professions, and Social Work. The University refused to provide the information voluntarily, and on August 1, 1978 the district director of the EEOC's Pittsburgh office issued a subpoena duces tecum for the data.[2] The University filed a petition to quash the subpoena, and

---

1. The complete charge, filed July 6, 1977, alleged:

> The University of Pittsburgh has discriminated, and is still discriminating, against women faculty employees by paying them lower monthly salaries than the ones paid to male faculty employees. Thus, the discrimination is based upon sex. Consequently, this action of the University of Pittsburgh amounts to an unlawful employment practice, and as such, is prohibited by the provisions of Title VII of the Civil Rights Act of 1964 as amended. Inasmuch as several fringe benefits are based upon or linked with salary, by paying women faculty employees lower monthly salaries than the ones paid to male faculty employees, the University of Pittsburgh is also guilty of committing an unlawful employment practice over other conditions of employment. This, too, constitutes discrimination based upon sex and is therefore prohibited by provisions of Title VII of the U.S. Civil Rights Act of 1964 as amended.

Exhibit A, Joint Appendix at 9(a).

Margaret Carroll certified she was filing the charge on behalf of twenty-nine present or former faculty members in the School of Nursing who claimed to be aggrieved by the University's practices. On August 12, 1977, the EEOC referred the charge to the Pennsylvania Human Relations Commission (PHRC) pursuant to Section 706(c) of Title VII of the Civil Rights Act of 1974, as amended, 42 U.S.C. § 2000e–5(c) (1976). The ANA then requested the PHRC to terminate processing the charge, whereupon the EEOC reassumed jurisdiction of the complaint.

2. On August 1, 1978, a subpoena was issued, signed by the EEOC's District Director, requiring the University to produce the following:

1. Produce a list of all assistant instructors, instructors, assistant professors, associate professors and professors in the Schools of Nursing, Pharmacy, Health Related Professions, and Social Work. For each, indicate sex, date of hire, date of termination, (if applicable), academic degree held, whether tenured or non-tenured, whether part-time or full-time, and position(s) held during the period June 1975 to present. Additionally, indicate each aforesaid employee's initial salary and present salary and length of term of annual contract of each; i. e., ten months, twelve months, etc.

2. Produce the written/printed functional job descriptions and all written/printed materials describing all duties and job/position requirements of all assistant instructors, instructors, assistant professors, associate professors, and professors in each of the aforesaid schools.

3. Produce the written/printed qualifications and requirements necessary to perform the duties of each position, occupied by assistant instructors, instructors, assistant professors, associate professors, and professors in each of the aforesaid schools.

If the records do not exist in the form requested in Item 1 above, production of the information therein requested as most substantively provides the Commission with that information will be accepted as compliance.

Joint Appendix at 28a.

the Commission denied this request. In November of 1979, the EEOC filed an application to enforce the subpoena, pursuant to section 710 of Title VII, 42 U.S.C. § 2000e–9 (1976). The University counterclaimed for injunctive and declaratory relief claiming that the EEOC regulations that permitted the disclosure of investigatory files prior to litigation violated the prohibition against public disclosure contained in section 709(e) of Title VII, 42 U.S.C. § 2000e–8(e) (1976).[3]

After a full hearing on the merits, the district court ordered enforcement of the subpoena and authorized disclosure of the investigative material in accordance with agency regulations. See 29 C.F.R. § 1601.22 (1979). In so ruling the court held that although the scope of the subpoena was quite broad, the material requested was relevant to the charge of sex based discrimination and should be produced.

On April 4, 1980 the University filed a motion for rehearing which the district court denied. This appeal followed.

DISCUSSION

A. *Subpoena enforcement*

■ In *Powell v. United States*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964) the Supreme Court established three requirements for the enforcement of an administrative subpoena. Specifically, it is the government's burden to prove: (1) that the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose; (2) that the information sought is not already within the government's possession; and (3) that procedures required by the agency issuing the subpoena have been followed. *Id. See also United States v. McCarthy*, 514 F.2d 368, 372 (3d Cir. 1975). The trial court found the subpoenaed information to be relevant, not already within the possession of the Commission, and requested pursuant to agency procedure. These findings are not clearly erroneous and we affirm the district court for the reasons discussed below. Fed.R.Civ.P. 52(a). *See Denicola v. G. C. Murphy, Co.*,

562 F.2d 889, 892 (3d Cir. 1977) (factual findings of district court in Title VII cases must be sustained unless clearly erroneous).

The University claims that because the EEOC is investigating solely the employment practices of the School of Nursing, the faculty information from other schools is irrelevant. There can be no comparison between the various schools within the University, appellant argues, because, among other things, the composition of the student bodies differs; the courses, programs, and research of each school are distinct; the external competition for faculty positions differs; and the amount of faculty research and publication required varies widely between schools.

■ The EEOC seeks the faculty employment records of four related schools. While the employment data from these schools may not be identical with data from the School of Nursing, such information may provide a useful context for evaluating the practices under investigation. A similar subpoena request was upheld by the tenth circuit in *EEOC v. University of New Mexico*, 504 F.2d 1296 (10th Cir. 1974), where the commission requested faculty employment records for the entire college of engineering even though the investigation was limited to the employment practices of the Department of Electrical Engineering and Computer Sciences. In enforcing the subpoena request, the court stressed that the material requested was relevant to the inquiry and sufficiently definite: "The inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is relevant .... All that is now required is that the investigation be for a lawfully authorized purpose." *Id.* at 1302, *quoting from, United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). *Compare CAB v. United Air Lines*, 542 F.2d 394, 402 (7th Cir. 1976) (material sought amounted to a "general warrant"—enforcement denied). The material requested here is not

---

3. The challenged regulations on disclosure of investigative files are found at 29 C.F.R. §§ 1601.22 & 1610.17(d) (1979).

indefinite, but limited to the practices of four related schools within the University. Further, because the School of Nursing faculty is almost totally female, examination of other schools is crucial for any investigation of gender based discrimination. In light of these circumstances the material sought by the Commission is relevant. The investigatory powers of EEOC should be interpreted broadly; the material requested "relate[s] to unlawful employment practices" and is "relevant to the charge under investigation." § 709(a); 42 U.S.C. § 2000e–8(a) (1976); *EEOC v. Cambridge Tile*, 590 F.2d 205, 206 (6th Cir. 1979); *Motorola, Inc. v. McLain*, 484 F.2d 1339, 1342 (7th Cir. 1973).

The second element of the *Powell* prima facie test for the enforceability of a subpoena requires the Commission to show that the information sought by the subpoena is not already within the possession of the government. *United States v. Powell*, 379 U.S. at 58, 85 S.Ct. at 255. The record at trial contains a letter from EEOC compliance officer, Mr. Paul Southworth, III to the University which identifies the material in issue and states that he will need access to it. Joint Appendix at 21a (exhibit F). On the basis of this letter it was not clearly erroneous for the lower court to conclude that the Commission did not possess the requested information.

The final criterion outlined by the *Powell* court for enforcing a subpoena requires the Commission to show that it has followed all the procedural steps mandated by statute. In this case, section 709(a) and 710 of Title VII, 42 U.S.C. §§ 2000e–8(a) & 2000e–9(a) require only that the subpoena be "[i]n connection with any investigation of a charge . . . and relevant to the charge." 42 U.S.C. § 2000e–8(a) (1976). The Commission's regulations outlining the procedures for issuing a subpoena require that:

The subpoena shall state the name and address of its issuer, identify the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested.

29 C.F.R. 1601.17 (1979). All this information was contained within the subpoena. ■ The EEOC's regulations also require that "[d]uring the Commission investigation, the Commission shall verify the authorization of such charges by the person on whose behalf the charge is made." 29 C.F.R. 1601.7 (1979). The district court found correctly that the Commission had satisfied the verification requirement in this instance. The Commission sent out questionnaires to each of the twenty-nine nursing faculty members listed as victims of the University's alleged discriminatory policies. These questionnaires requested various employment information that the individuals supplied. This procedure comported with the verification requirements of 29 C.F.R. 1601.7 (1979).[4]

B. *Disclosure of Investigatory Files*

At trial, the University counterclaimed for a declaratory judgment and injunctive relief claiming that the Commission's disclosure regulations, 29 C.F.R. §§ 1601.22 & 1610.17(d) (1979), were void and unenforceable. The district court dismissed the counterclaim and we affirm that dismissal.

■ Section 709(e) of Title VII, 42 U.S.C. § 2000e–8(e) (1976), prohibits any employee of the EEOC, under pain of criminal penalty, from disclosing any information obtained during an EEOC investigation to the public. The challenged regulations carve out an exception to this general prohibition by authorizing disclosure of investigative

---

4. The University contends that because the Commission did not obtain signed affidavits from each of the twenty-nine individuals, a practice recommended by the EEOC compliance manual (CCH) § 8.5(d) (1979), the charge was improperly verified. We reject this argument. As noted above, the procedures followed by the Commission in this case satisfy the mandate of 29 C.F.R. 1601.7 (1979). Further, the EEOC need not follow the procedures outlined in its compliance manual in every case. The manual's provisions are discretionary in this respect, and read that "[t]here may be instances when . . . a particular procedure . . . should not be followed." EEOC Compliance Manual (CCH) ¶ at 3.

files on an employer to the charging parties, the respondents, their attorneys, and witnesses when disclosures deemed necessary for securing appropriate relief. 29 C.F.R. § 1601.22 (1979).[5] The Supreme Court in *EEOC v. Associated Dry Goods,* —— U.S. ——, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981) recently sustained the validity of these precise regulations. In that case, the Court concluded that Congress did not include the charging parties within the "public" to whom disclosure of confidential information is illegal under the provisions of Title VII. Hence release of these files to charging parties does not fall within the disclosure prohibition of section 709(e). *Id.* at ——, 101 S.Ct. at 823–26. The Court did hold, however, that only the charging party is entitled to examine his file: files of similar complaints against the same employer are not to be released. As the Court stated: "there is no reason why the charging party should know the content of any other employee's charge, and he must be considered a member of the public with respect to charges filed by other people. With respect to all files other than his own, he is a stranger." *Id.* at ——, 101 S.Ct. at 826. Applied to this case, *Associated Dry Goods* mandates disclosure only to Margaret Carroll, the charging party, and her attorney.

The judgment of the district court, both in enforcing the subpoena and granting disclosure of the EEOC's file solely to Margaret Carroll and her attorney, will be affirmed, 487 F.Supp. 1071.

5. The Commission's general policy on disclosure is set out in 29 CFR § 1601.22:

> Neither a charge, nor information obtained pursuant to section 709(a) of Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to section 709(c) and (d) of Title VII, shall be made matters of public information by the Commission prior to the institution of any proceedings under this Title involving such charge or information. This provision does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief. This provision also does not apply to such earlier dis-

closures to representatives of interested Federal, State and local authorities as may be appropriate or necessary to the carrying out of the Commission's function under Title VII, nor to the publication of data derived from such information in a form which does not reveal the identity of charging parties, respondents, or persons supplying the information.

The Commission also has created very specific special disclosure rules governing the form and scope of disclosure to those persons whom the Commission treats as being separate from the "public" to whom the statute forbids any disclosure. 29 CFR § 1610.-17(d); EEOC Compliance Manual § 63.