**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3219

_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Appellant

v.

KRONOS INCORPORATED

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 2:09-mc-00079-AJS
District Judge: Honorable Arthur J. Schwab

_____

Argued February 26, 2010

Before:  CHAGARES, STAPLETON, and LOURIE[*], Circuit
Judges.

(Filed: September 7, 2010)

_____

Corbett Anderson, Esq. (Argued)
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, DC  20507

_____

[*]Honorable Alan D. Lourie, United States Circuit Judge for
the Federal Circuit, sitting by designation.

Lisa H. Hernandez, Esq.
Equal Employment Opportunity Commission
1001 Liberty Avenue
Pittsburgh, PA  15219
        Counsel for Appellant

Robert L. Ashe, Jr., Esq. (Argued)
Ashe, Rafuse & Hill
1355 Peachtree Street
Suite 500
Atlanta, GA  30309

Terrance H. Murphy, Esq.
Buchanan Ingersoll & Rooney
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, PA  15219
        Counsel for Appellee

Rae T. Vann
Norris, Tysse, Lampley
 & Lakis, LLP
1501 M Street, N.W. Ste. 400
Washington, DC  2005
        amici curiae

_____

OPINION

_____

CHAGARES, Circuit Judge.

On March 18, 2009, the Equal Employment Opportunity Commission (the "EEOC" or the "Commission") filed a Subpoena Enforcement Application in the United States District Court for the Western District of Pennsylvania, seeking enforcement of a third-party administrative subpoena it issued to Kronos Incorporated ("Kronos") pertaining to the EEOC's investigation into a charge of discrimination against Kroger Food Stores ("Kroger"). On June 1, 2009, the District Court issued an order narrowing the scope of the

subpoena and directing the parties to negotiate a confidentiality order. On July 22, 2009, the District Court denied the EEOC's motion to adopt its proposed confidentiality order, granted Kronos's motion for adoption of its order, and entered Kronos's proposed order as the court's own, with slight modifications. The EEOC appeals from both of these orders. For the reasons stated below, we will affirm in part and reverse in part the District Court's order of June 1, 2009 modifying the scope of the subpoena. We will vacate the District Court's July 22, 2009 confidentiality order and remand for further proceedings.

I.

Vicky Sandy, who is hearing and speech impaired, filed a charge of discrimination with the EEOC against Kroger on or about June 30, 2007. According to her charge, Sandy applied for work as a cashier, bagger, and stocker in May 2007 at a Kroger in Clarksburg, West Virginia. She alleged that Kroger did not hire her because of her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). Sandy alleged that "[i]n May, 2007, a management official (name unknown) told me that I would not be a good fit for any openings because of the way that I speak. After denying me employment, they continued to advertise for openings." Joint Appendix ("JA") 23.

Kroger utilizes a Customer Service Assessment, created by Kronos (the "Assessment" or "Kronos Assessment"), in its hiring process.[1] The Assessment purports to "measure[] the human traits that underlie strong service orientation and interpersonal skills, such as: Controlling impatience; Showing respect; Listening

---

[1]The Assessment consists of fifty statements, to which the applicant must answer "strongly disagree," "disagree," "agree," or "strongly agree." It includes statements such as the following: "You have confidence in yourself"; "You are always cheerful"; "You try to sense what others are thinking and feeling"; "You say whatever is on your mind"; and "It is easy for you to feel what others are feeling." JA 27.

3

attentively; Working well on a team; [and] Being sensitive to others' feelings." JA 25. According to Kronos, applicants who perform well on the assessment are more likely to "[a]ct cheerful, polite, and friendly . . . [l]isten carefully . . . and . . . [c]ommunicate well with customers." JA 26. Sandy's score on the Assessment was 40%. JA 33.

According to Kroger's position statement in response to Sandy's charge, the store manager, Bob Bowers, interviewed Sandy for the open positions. Kroger alleged that during the interview, "Bowers had difficulty in understanding [Sandy's] verbal responses to questions" and found her responses to be "garbled and at times inaudible and unintelligible." JA 39. Kroger also noted that Bowers discussed with Sandy her low score on the Kronos Assessment and her lack of job experience.

Kroger provided the EEOC with a copy of Sandy's employment application summary. The portion summarizing the results of the Kronos Assessment provides, inter alia, that Sandy "is less likely to . . . listen carefully, understand and remember." JA 33. The summary contains an "Interview Guide" that lists suggested follow-up questions. Sandy's follow-up questions include, "Describe the hardest time you've had understanding what someone was talking about." Sandy's application summary also suggests observations the interviewer should make, such as "How does the applicant speak during the interview[?] Listen for: Correct language, clear enunciation, appropriate volume/tone/expression/smile/eye contact." JA 33.

After Kroger admitted in its position statement that it relied at least in part on the Assessment in its hiring decision, the EEOC sent Kroger a request for information ("RFI"), dated January 16, 2008, seeking several categories of documents related to the Assessment and its use. Included was a request for copies of "any and all validity studies" and information pertaining to applications for the position of "Cashier Bagger" going back to January 1, 2007. JA 42. The RFI asked that Kroger provide the information on or before February 12, 2008 – the date of the EEOC investigator's planned site-visit.

4

Kroger responded to the RFI on February 14, 2008, but failed to provide all of the information requested, including validity studies. The EEOC contends that it was not sure at that point whether Kroger had access to Kronos's validity studies. JA 103 n.5.

On March 11, 2008, the EEOC issued a third-party administrative subpoena to Kronos. The subpoena sought validity studies related to the Kronos tests Kroger purchased, instruction manuals for the assessment tests Kroger used, documents related to Kroger, "and any validation efforts made regarding any or all jobs" at Kroger, any documents related to potential adverse impact on people with disabilities, and job analyses related to "any and all positions" at Kroger. JA 48-49.

The EEOC later notified Kroger that it was expanding the scope of its ADA investigation:

> Based upon its authority, the [EEOC] hereby serves notice that the above referenced charge has been expanded to include the issue of disability with respect to the use of assessment test in hiring (class) during the period August 1, 2006 to the present and for all facilities in the United States and its territories.

JA 54.

According to the EEOC, around this time it discovered an article, co-written by a Kronos employee, which indicated that minority applicants performed worse than non-minority applicants on the Kronos Assessment administered by a large, geographically diverse retailer. Further, the EEOC maintains that its charge database contained complaints against Kroger alleging failure to hire based on disability and race.

Based on these circumstances, the EEOC sent Kroger a letter informing it that the EEOC was expanding its investigation once again, this time to include race:

Based upon its authority, the [EEOC] hereby serves notice that the above referenced charge has been expanded to include the basis of disability and race (black) with respect to the issues of the use of assessment tests . . . in hiring (class) for the period beginning from the date that such test(s) were implemented by [Kroger] through the present and for all facilities in the United States and its territories.

JA 56. The EEOC rescinded its original subpoena to Kronos and issued a new subpoena directing that Kronos:

1.     Produce any and all documents and data constituting or related to validation studies or validation evidence pertaining to Unicru [a Kronos subsidiary] and/or Kronos assessment tests purchased by The Kroger Company, including but not limited to such studies or evidence as they relate to the use of the tests as personnel selection or screening instruments.

2. Produce the user's manual and instructions for the use of the Assessment Tests used by The Kroger Company[.]

3. Produce any and all documents and data, including but not limited to correspondence, notes, and data files, relating to the Kroger Company; its use of the Assessment Tests; results, ratings, or scores of individual test-takers; and any validation efforts made thereto.

4.     Produce any and all documents discussing, analyzing or measuring potential adverse impact on individuals with disabilities and/or an individuals [sic] race.

5. Produce any and all documents related to any and all job analyses created or drafted by any person or entity relating to any and all positions at The Kroger

6

Company.

6. Furnish a catalogue which includes each and every assessment offered by Unicru/Kronos. Additionally provide descriptions of each assessment.[2]

JA 51-52.

Kronos filed a Petition to Revoke the Subpoena with the EEOC, objecting that the subpoena "requests information that is: (1) not relevant to any allegation made in [Sandy's] Charge, and (2) constitutes [sic] commercially valuable and trade secret property of Kronos, which the EEOC seeks without adequate protection." JA 59. The EEOC denied the Petition to Revoke on January 7, 2009 and ordered Kronos to comply with the subpoena. The EEOC determined that the information the subpoena requested was directly relevant to its properly expanded investigation and "well within the [EEOC]'s investigative authority." JA 108. It further concluded that Title VII of the Civil Rights Act of 1964 ("Title VII"), the ADA, and the EEOC's regulations regarding confidentiality of information obtained during an investigation provided sufficient protection against disclosure without a confidentiality agreement.

When Kronos failed to comply with the subpoena, the EEOC filed a Subpoena Enforcement Action, which the District Court granted in part and denied in part. The District Court characterized the subpoena's scope as "breathtaking – potentially including most of Kronos' business documents, covering its entire client base, with no time, geographic, or job description limitations." JA 5 (footnotes omitted). The District Court determined that materials unrelated to Sandy's discrimination charge were not relevant to the investigation. The District Court modified the subpoena to include only Kronos's work for Kroger limited to the time period of January 1, 2006 to May 31, 2007, the state of West Virginia, and the job positions of bagger, stocker,

---

[2]The EEOC no longer seeks enforcement of Paragraph 6 of the subpoena. EEOC Br. at 16 n.5.

7

and/or cashier/checker. Specifically, the District Court ordered Kronos to comply with the following provisions:

1. Produce any user's manual and instructions for the use of the Assessment Tests provided to the Kroger Company.

2. Produce any and all documents and data, including but not limited to correspondence, notes, and data files, relating to The Kroger Company; The Kroger Company's use of the Assessment Tests; results, ratings, or scores of individual test-takers at The Kroger Company; and any validation efforts performed specific[ally] for and only for The Kroger Company.

3. Produce any and all documents discussing, analyzing or measuring potential adverse impact on individuals with disabilities, relating specifically to and only to the Kroger Company.

4. Produce any and all documents related to any and all job analyses created or drafted by Kronos relating to the bagger, stocker, and/or cashier/checker positions at The Kroger Company.

5. Furnish any catalogue provided to The Kroger Company.

6. Items 1 through 5 are limited to the time period of January 1, 2006 through May 31, 2007, in the state of West Virginia, for the positions of bagger, stocker, and/or cashier/checker.

JA 5-6.

The District Court also ordered the parties to enter into "any appropriate confidentiality order to protect any trade secret/confidential information of Kronos and the personal information of persons taking the Assessment Tests." JA 6. The

8

parties negotiated and agreed to certain provisions of a confidentiality order, but failed to arrive at an agreement regarding other terms Kronos requested, including: 1) a limitation confining the use of confidential material to the investigation of Sandy's allegations against Kroger and any subsequent charge she may file; 2) a restriction that during the investigation, confidential material may be disclosed only to EEOC employees with a "need to know" and any other person mutually agreed upon by Kronos and the EEOC; and 3) a requirement that the EEOC return confidential material within ten business days after concluding the Sandy investigation, and destroy any documents, including EEOC notes or memoranda, that reflect or refer to the confidential material within ten business days after a notice of right to sue.

Both parties submitted proposed confidentiality orders to the District Court. On July 22, 2009, the court denied the EEOC's motion to adopt its proposed confidentiality order and granted Kronos's motion for entry of its proposed confidentiality order. The court added an additional term to the Kronos order: "Said confidential material shall not be entered into a centralized database." JA 9.

The EEOC appeals both decisions of the District Court.

II.

The District Court exercised jurisdiction under 29 U.S.C. § 161(2) and 28 U.S.C. §§ 1331 and 1345. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's decision to enforce an administrative subpoena for abuse of discretion. Chao v. Cmty. Trust Co., 474 F.3d 75, 79 (3d Cir. 2007). We also employ an abuse of discretion standard when reviewing the grant of a confidentiality order. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 783 (3d Cir. 1994). "Abuse of discretion occurs when 'the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" Chao, 474 F.3d at 79 (quoting NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992)).

9

III.

A.

The ADA prohibits, inter alia, use of employment tests that "screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the . . . test . . . , as used by the [employer], is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6); see also 42 U.S.C. § 12112(b)(7) (defining "discriminate" to include "failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant . . . ."). "Both disparate treatment and disparate impact claims are cognizable under the ADA." Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003).

The EEOC is empowered to investigate charges of discrimination to determine whether there is reasonable cause to believe that an employer has engaged in an unlawful employment practice.[3] See 42 U.S.C. §§ 2000e-5(b), 12117(a) (expanding the EEOC's power to investigate and address discrimination on the basis of disability). In connection with its investigation, the EEOC may issue administrative subpoenas. See id. § 2000e-9; 29 U.S.C. § 161(1). However, the EEOC's statutory investigative authority is not plenary; the EEOC is entitled to access only evidence

---

[3]In addition to investigating charges of discrimination filed by or on behalf of an individual, the EEOC has the authority to file and investigate a commissioner's charge alleging unlawful employment practices, pursuant to 42 U.S.C. §§ 2000e-5(b) and 2000e-6(e).

"relevant to the charge under investigation." 42 U.S.C. §§ 2000e-8(a).[4]

The relevance requirement is not particularly onerous. Courts have given broad construction to the term "relevant" and have traditionally allowed the EEOC access to any material that "might cast light on the allegations against the employer." EEOC v. Shell Oil Co., 466 U.S. 54, 68-69 (1984); see also EEOC v. Dillon Cos., Inc., 310 F.3d 1271, 1274 (10th Cir. 2002) ("The Supreme Court has explained that the 'relevancy' limitation on the EEOC's investigative authority is 'not especially constraining.'" (quoting Shell Oil, 466 U.S. at 68)); EEOC v. Ford Motor Credit Co., 26 F.3d 44, 47 (6th Cir. 1994) (noting that "Congress intended [the EEOC] to have broad access to information relevant to inquiries it is mandated to conduct"); EEOC v. Franklin & Marshall Coll., 775 F.2d 110, 116 (3d Cir. 1985) ("The concept of relevancy is construed broadly when a charge is in the investigatory stage."). Nonetheless, the EEOC's power of investigation is anchored to the charge of discrimination, and courts must be careful not to construe the charge and relevance requirements so broadly as to confer "unconstrained investigative authority" upon the EEOC. Shell Oil, 466 U.S. at 64-65; see also EEOC v. United Air Lines, Inc., 287 F.3d 643, 653 (7th Cir. 2002). The relevance requirement "is designed to cabin the EEOC's authority and prevent fishing expeditions." United Air Lines, 287 F.3d at 653 (quotation marks omitted). The EEOC bears the burden of demonstrating relevance. See EEOC v. S. Farm Bureau Cas. Ins. Co., 271 F.3d 209, 211 (5th Cir. 2001).

---

[4]To obtain enforcement of an administrative subpoena, an agency must demonstrate that 1) its investigation has a legitimate purpose, 2) the inquiry is relevant to that purpose, 3) the agency does not already possess the information requested, 4) the agency has complied with relevant administrative requirements, and 5) the demand is not "'unreasonably broad or burdensome.'" Univ. of Med. & Dentistry of N.J. v. Corrigan, 347 F.3d 57, 64 (3d Cir. 2003) (quoting FDIC v. Wentz, 55 F.3d 905, 908 (3d Cir. 1995)). It is the second requirement, that the inquiry be relevant to a legitimate purpose, that is at issue here.

Once the EEOC begins an investigation, it is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation of the charge. See, e.g., Gen. Tel. Co. of the N.W., Inc. v. EEOC, 446 U.S. 318, 331 (1980) ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable."); EEOC v. Cambridge Tile Mfg. Co., 590 F.2d 205, 206 (6th Cir. 1979) (per curiam) (enforcing EEOC subpoena seeking information related to sex discrimination in job classification after EEOC uncovered evidence of such discrimination during investigation of allegations of sex and race discrimination in termination); EEOC v. Gen. Elec. Co., 532 F.2d 359, 364-65 (4th Cir. 1976) ("[T]he original charge is sufficient to support action by the EEOC . . . for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge . . . ."). Rather, the EEOC has the power to investigate a "a broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge." Cambridge Tile, 590 F.2d at 206.

B.

The EEOC argues on appeal that, by narrowing the subpoena's scope rather than enforcing it as written, the District Court abused its discretion. The EEOC contends that the information it sought in the subpoena is relevant because it might cast light on Sandy's allegations against Kroger, and thus meets the liberal standard of relevance the Supreme Court espoused in Shell Oil. In particular, the EEOC argues that the scope of Kroger's use of the Kronos Assessment – "nationwide (not just 'the state of West Virginia'), for all retail jobs (not just for 'baggers, stockers, and/or cashiers/checkers'), from whatever date Kroger began using the test to the present (not just from 'January 1, 2006 through May 31, 2007'" – is relevant as to whether Kroger discriminated against Sandy individually and/or as a member of a class of individuals with disabilities adversely impacted by the Kronos Assessment test. EEOC Br. at 19. The EEOC also asserts that Kronos Assessment instructions and manuals are relevant (regardless of whether Kronos actually provided them to Kroger), as are materials related

12

to validation studies and potential adverse impact based on disability, even if such materials are not specific to Kroger's use of the test. We agree. The District Court applied too restrictive a standard of relevance in limiting the information related to geography, time, and job position. Further, the District Court erred in limiting the EEOC's access to user's manuals and instructions, validation information, and materials pertaining to potential adverse impact on individuals with disabilities.

Sandy's charge alleges failure to hire based on her disability. Kroger admitted to relying at least in part on the Kronos Assessment in evaluating Sandy.[5] In order for the EEOC to determine whether Kroger's failure to hire Sandy was discriminatory, it is entirely appropriate for the EEOC to investigate Kroger's use of the Assessment. The EEOC is entitled to information that "may provide a useful context" for evaluating employment practices under investigation, in particular when such information constitutes comparison data. EEOC v. Univ. of Pittsburgh, 643 F.2d 983, 985-86 (3d Cir. 1981) (holding EEOC request for faculty employment records of four related schools was relevant to charge of sex discrimination in the School of Nursing, especially because the School of Nursing faculty was almost entirely female); see also EEOC v. Associated Dry Goods Corp., 449 U.S. 590, 604 (1981) ("Statistics and other information about an employer's general practices may certainly be relevant to individual charges of discrimination . . . ."); Franklin & Marshall Coll., 775 F.2d at 116-17 (holding materials related to other tenure candidates in a "similar time frame" were "relevant and not overbroad" in EEOC's investigation of charge alleging discriminatory denial of tenure because they might provide useful

---

[5]According to Kroger, "Bowers also discussed with Charging Party the low score on the Customer Service Assessment she had completed as part of the application process. Bowers noted from the Customer Service Assessment that Charging Party potentially might be less inclined to deliver great customer service . . . . Bowers ended the interview by informing Charging Party that he was concerned about her qualifications, including her low Customer Service Assessment . . . ." JA 38-39.

13

comparison data and help determine whether there was a "pattern of discrimination"). In this case, information pertaining to Kroger's actual use of the Kronos Assessment may provide "useful context" and important comparative data for the EEOC's investigation into Sandy's charge of discrimination.

The District Court's decision to narrow the subpoena to include only bagger, stocker, and/or cashier/checker positions was an abuse of its discretion. Kroger purportedly uses the Kronos Assessment in hiring for every retail position. JA 104. Under the Shell Oil relevance standard, there is no reason to confine the subpoena to Kroger's use of the Assessment for bagger, stocker, and/or cashier/checker positions. Information related to other job descriptions may shed light on whether the Assessment has an adverse impact on persons with disabilities. Such data, at the very least, provides comparative information on the Assessment, which is "absolutely essential to a determination of discrimination." EEOC v. Roadway Express, Inc., 261 F.3d 634, 642 (6th Cir. 2001) (quotation marks omitted) (holding that the EEOC was entitled to information related to job positions other than those at issue in the charge because such information met the Shell Oil standard of relevance).

For the same reason, the District Court misapplied the relevance standard when it limited the EEOC's access to Kroger's information related only to the state of West Virginia. Kroger uses the Kronos Assessment in hiring nationwide. JA 104. An employer's nationwide use of a practice under investigation supports a subpoena for nationwide data on that practice. EEOC v. United Parcel Serv. Inc., 587 F.3d 136, 139 (2d Cir. 2009) (per curiam) (enforcing EEOC subpoena seeking information on how employer applied appearance guidelines nationwide in EEOC investigation of two complaints of religious discrimination). Here, nationwide materials could provide important comparison data, as well as a "useful context" for evaluating whether Kroger's use of the Assessment violates the ADA. See Univ. of Pittsburgh, 643 F.2d at 985-86.

The District Court also too narrowly circumscribed the subpoena when it instituted the temporal limitation of January 1,

2006 through May 31, 2007. Although the relevance requirement does impose temporal limits on the scope of the EEOC's inquiry, the duration of Kroger's use of the Kronos test falls within the scope of information that might cast light on the practice under investigation. Evidence related to the employment practice under investigation prior to and after Sandy's charge provides valuable context that may assist the EEOC in determining whether discrimination occurred. Roadway Express, 261 F.3d at 642 (enforcing EEOC subpoena for information both before the alleged discrimination took place and after the charge of discrimination).

Kronos argues that the EEOC is not entitled to the information it seeks because Sandy's charge is completely devoid of any allegations of nationwide discrimination and discrimination in job positions other than those for which she applied. Kronos's argument fails to recognize that the EEOC's investigatory power is broader than the four corners of the charge; it encompasses not only the factual allegations contained in the charge, but also any information that is relevant to the charge. Thus, the EEOC need not cabin its investigation to a literal reading of the allegations in the charge. As we have acknowledged, "[t]he concept of relevancy is construed broadly when a charge is in the investigatory stage." Franklin & Marshall Coll., 775 F.2d at 116; see also Univ. of Pittsburgh, 643 F.2d at 986 ("The investigatory powers of the EEOC should be interpreted broadly."). The EEOC does not seek "information or materials related to assessment tests Kroger has never purchased and has never used." EEOC Reply Br. at 12. The requested materials are not so broad as to render the relevance requirement a "nullity." See Shell Oil, 466 U.S. at 69 (noting that courts must not interpret the standard of relevance so broadly that it becomes a "nullity"). We decline Kronos's invitation to cabin the EEOC's investigation such that it is unable to access materials that meet the Shell Oil relevance standard – that is, materials that might cast light on Sandy's charge of discrimination.

The District Court's decision denying the EEOC access to particular materials unless they relate only to Kroger was an improper use of its discretion. The District Court limited production of "documents discussing, analyzing, or measuring potential adverse impact on individuals with disabilities" to those

15

"relating specifically to and only to The Kroger Company." JA 6. The court also modified the subpoena to limit production of validation study information to validation efforts "performed specific[ally] for and only for Kroger." JA 5-6. Such information, regardless of whether it was "performed specifically for" or "relat[es] specifically to and only to" Kroger, certainly might shed light on the charge of discrimination. If Kronos has information relating to whether its Assessment has an adverse impact on disabled people, that information is clearly relevant to whether Kroger violated the ADA by using the Assessment. Additionally, information pertaining to the validity of the test, even if it was not "performed specific[ally] for and only for Kroger," could assist the EEOC in evaluating whether Kroger's use of the test constituted an unlawful employment action. Modifying the subpoena to exclude these materials was a misapplication of the broad relevance standard that accompanies the EEOC's subpoena authority.

Kronos argues that Sandy alleged disparate treatment in her charge but failed to allege disparate impact, and thus the EEOC is not entitled to investigate whether Kroger's use of the Assessment has an adverse impact on people with disabilities. We disagree. Sandy's charge does not contain a legal theory, nor was she required to assert one. See 29 C.F.R. § 1601.12(a)-(b) (requiring, inter alia, a "clear and concise statement of the facts" related to the alleged unlawful employment practices and noting that a charge that "describe[s] generally the action complained of" is sufficient). We have recognized that the individuals who draft charges are often "not well vested in the art of legal description" and as a result, "the scope of the original charge should be liberally construed." Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978); see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 462-63 & n.4 (5th Cir. 1970) (noting that a layperson filling out a charge of discrimination might have difficulty articulating legal basis for alleged discrimination); EEOC v. E.I. DuPont de Nemours & Co., 373 F. Supp. 1321, 1335 (D. Del. 1974) (explaining that the "precise language of the charge . . . provides less guidance for subsequent proceedings than the general character of the grievances to which the charge alludes" and that the charge is often drawn by a layperson who "perceives only dimly the nature and cause of the discrimination"), aff'd on other

16

grounds, 516 F.2d 1297 (3d Cir. 1975).  It is entirely possible that Sandy was not fully aware of the extent to which Kroger relied on the test in evaluating her application, and thus did not perceive the potential impact the test had on Kroger's decision not to hire her. In any event, it is up to the EEOC, not Sandy, to investigate whether and under what legal theories discrimination might have occurred.

Finally, the District Court abused its discretion in limiting Kronos's production of the user's manual and instructions for the Assessment to those materials only actually provided to Kroger. We agree with the EEOC that regardless of whether Kronos actually provided Kroger with user's manuals and instructions, the materials may aid the EEOC in understanding the Assessment's potential for disparate impact on the disabled.

For the foregoing reasons, we will reverse the District Court's judgment insofar as it limited the scope of the EEOC's subpoena in terms of geography, time, and job description.  We will also reverse to the extent that the District Court's order limits the EEOC's access to validation efforts conducted solely on behalf of Kroger, documents relating to potential adverse impact on disabled individuals to those relating specifically and only to Kroger, and user's manuals and instructions for the Assessment that were actually provided to Kroger.

## C.

We now turn to the EEOC's request for "documents discussing, analyzing or measuring potential adverse impact . . . [on the basis of] race." JA 52.  The EEOC argues that it is entitled to this information as part of a properly expanded investigation of Sandy's charge and that the District Court abused its discretion in modifying its subpoena to exclude such materials.  We disagree.[6]

---

[6]We understand the EEOC's argument in support of its request for information related to potential adverse impact based on race to be premised on a reasonable expansion of its investigation of the Sandy charge.  However, to the extent that the EEOC asserts

17

According to the EEOC, it expanded the investigation to include potential race discrimination because it discovered a scholarly article, co-written by a Kronos employee, suggesting that minority applicants performed worse than non-minorities on the Kronos Assessment. The EEOC also contends that it discovered in its database charges against Kroger alleging race discrimination in hiring. According to the EEOC, this constitutes evidence that the Assessment might be a potential "root source of discrimination" against people with disabilities and African Americans, and is thus a legitimate basis for it to expand its investigation into discrimination based on race. See Gen. Elec. Co., 532 F.2d at 366 n.9 ("'The Commission need not confine itself to the particular symptom of discrimination identified by a charge if a reasonable investigation of that charge uncovers a root source of discrimination responsible for that and other violations of Title VII.'" (quoting DuPont de Nemours & Co., 373 F. Supp. at 1335)). For support, the EEOC cites to General Electric Co., 532 F.2d at 364-66, in which the Court of Appeals for the Fourth Circuit held that the original charge of race discrimination supported EEOC action (including a lawsuit) to address sex discrimination that the EEOC uncovered while investigating the race discrimination charge.

Kronos responds that the District Court did not abuse its discretion in limiting the subpoena to exclude information related to adverse impact based on race. Kronos cites to EEOC v. Southern Farm Bureau Casualty Insurance Co., 271 F.3d 209 (5th Cir. 2001), in support of its argument. In Southern Farm, an employee filed a charge with the EEOC alleging that Southern Farm had discriminated against him based on race. During the EEOC's investigation, Southern Farm provided the EEOC with a list of employees by name, position, and race. Based on this list,

_____

that the information related to race is relevant to Sandy's charge under the Shell Oil standard, we decline to hold that the EEOC's request for materials concerning whether the Kronos Assessment has an adverse racial impact is relevant to, or might shed light on, Sandy's charge that Kroger discriminated against her based on disability.

the EEOC suspected potential sex discrimination, and issued a subpoena requesting certain information related to possible unlawful employment practices based on sex.  Id. at 211.

The Court of Appeals for the Fifth Circuit affirmed the district court's refusal to enforce the EEOC subpoena for information relating to potential sex discrimination.  In affirming the district court's decision, the Southern Farm court noted that when the EEOC discovered what it considered to be evidence of sex discrimination, it could have exercised its authority under 42 U.S.C. §§ 2000e-5(b) and 2000e-6(e) to file a commissioner's charge alleging sex discrimination.  At that point, the EEOC would have been free to request information relevant to Southern Farm's employment of women.  Id.

While the EEOC is not required to ignore facts it uncovers in the course of a reasonable investigation of the charging party's complaint, that standard does not justify the expansion of the investigation undertaken here.  The charging party is a disabled white female who has complained of disability discrimination. We are unprepared to hold that a reasonable investigation of that charge can be extended to include an investigation of race discrimination.

We conclude that the inquiry into potential race discrimination is not a reasonable expansion of Sandy's charge. Instead, the EEOC's subpoena for materials related to race constitutes an impermissible "fishing expedition."  See United Air Lines, 287 F.3d at 653.  The EEOC's attempt to rely on an article in the public domain and purported charges of race discrimination in its database that are not a part of this record do not convince us otherwise.  We acknowledge that the EEOC's investigatory powers are expansive; however, the EEOC is still not permitted to "wander[] into wholly unrelated areas."  See Cambridge Tile, 590 F.2d at 206.  In this case, the EEOC's inquiry into discrimination based on race is wholly unrelated to Sandy's charge and does not

19

fall within the ambit of a reasonable expansion.[7]

For these reasons, we will affirm the District Court's judgment to the extent that it declines to enforce the portion of the EEOC's subpoena requesting information related to potential discrimination based on race.

IV.

Courts have "inherent equitable power" to grant orders of confidentiality upon a showing of good cause. Pansy, 23 F.3d at 785-86. The party seeking confidentiality establishes good cause by showing that "'disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" Id. at 786 (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)). The burden of justifying confidentiality remains at all times on the party seeking the order. Pearson v. Miller, 211 F.3d 57, 72 (3d Cir. 2000).

In Pansy, we held that courts deciding whether a party has established good cause should balance public interests against private interests. Pansy, 23 F.3d at 787. We recognized several factors that courts may consider as part of this "good cause balancing test":

> 1) whether disclosure will violate any privacy interests;
>
> 2) whether the information is being sought for a

---

[7]Because we conclude that the EEOC has not reasonably expanded its investigation to include race, we decline to address Kronos's argument that the EEOC lacks the authority to expand its discrimination investigation based on one anti-discrimination statute (the ADA) to include charges arising under a different statute (Title VII).

20

legitimate purpose or an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

Glenmade Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91). Under the good cause balancing test, there is a strong presumption against entering an order of confidentiality whose scope would prevent disclosure of information that would otherwise be accessible under a relevant freedom of information law. Pansy, 23 F.3d at 791. When a district court fails to conduct a good cause balancing test before issuing an order of confidentiality, that court has failed to exercise properly its discretion. Id. at 792.

In this case, the District Court entered a wide-reaching confidentiality order which defines "Confidential Material" as:

any documents or information in any form produced by Kronos pursuant to [the subpoena] or any information or documents that refer to or reflect information obtained from the documents or refer to or reflect information provided by Kronos pursuant to the Subpoena, including copies, notes or memoranda made by the EEOC during the Commission's investigation into the allegations made by Vicky Sandy and any subsequent or amended charge she may file.

21

JA 8. The order limits the use of Confidential Material solely for the purpose of Sandy's charge. It permits disclosure only to EEOC employees with a "need to know" and other individuals Kronos and the EEOC agree upon in writing. The District Court prohibited the EEOC from entering Confidential Material into a centralized database. The order prohibits the EEOC from disclosing the documents Kronos produces, and the information contained therein, to the charging party or her agents. The order also provides that:

> All Confidential Material, including copies thereof, will be returned by EEOC to Kronos within ten (10) business days after the investigation into [Sandy's charge] is concluded by EEOC. Any information or documents that reflect or refer to Confidential Material, including any notes or memoranda made by EEOC shall be destroyed by EEOC within ten (10) business days after a notice of right to sue is issued by EEOC, and such destruction shall be so certified to Kronos.

JA 9.

The EEOC appeals entry of the confidentiality order.[8] The EEOC argues that sufficient statutory and regulatory protection exists to safeguard confidential material without the confidentiality order and that the order's definition of Confidential Material is overbroad. In addition, the EEOC urges that the order is contrary to the EEOC's disclosure obligations under the Freedom of Information Act, 5 U.S.C. §§ 551-559, and its limitations on the

---

[8]We note that the EEOC does not challenge the portion of the order prohibiting it from disclosing subpoenaed material to Sandy or her agents during the investigation. EEOC Br. at 41 n.11. Further, the EEOC has represented that it "would honor the portion of the confidentiality order stating that the EEOC would disclose materials covered by the subpoena to individuals outside the Commission (including but not limited to expert witnesses) when mutually agreed upon in writing." Id.

EEOC's use of the subpoenaed material impermissibly interferes with the EEOC's law enforcement function.

The District Court did not articulate its reasoning for granting the order and its rationale for exercising its broad discretion to fashion the order by imposing the specific terms it chose to include. See Pansy, 23 F.3d at 791 ("Courts have discretion to fashion such orders according to the needs and circumstances of each case."). Without any indication that the District Court conducted the required good cause balancing test before entering this order, we must conclude that the entry of the order does not reflect the proper exercise of discretion. See id. at 792; cf. EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1410 (D.C. Cir. 1996) (remanding when the district court's failure to articulate its reasoning for sealing portions of the record rendered the court's decision unreviewable). Accordingly, we will vacate the order and remand to the District Court to conduct a good cause balancing test.

On remand, the District Court should be mindful of the statutory scheme governing disposal of government records. The Federal Records Disposal Act ("FRDA") prohibits destruction of government records except according to its requirements. 44 U.S.C. § 3314 ("[R]ecords of the United States Government may not be alienated or destroyed except under this chapter."). The FRDA defines "records" as "documentary materials . . . made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation . . . as evidence of the organization, function, policies, decisions, procedures, operations, or other activities of the Government." 44 U.S.C. § 3301. Courts must exercise caution when issuing confidentiality orders so as not to demand that the EEOC destroy government documents, including notes and memoranda, in conflict with the EEOC's duty to obey the requirements of the FRDA.

Based on the aforementioned reasons, we will vacate the District Court's confidentiality order and remand to permit the District Court to conduct a good cause balancing test.

23

V.

For the reasons stated above, we will reverse in part and affirm in part the District Court's judgment of June 1, 2009 narrowing the scope of the subpoena. We will vacate and remand the District Court's July 22, 2009 confidentiality order.