NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2869
_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Appellant

v.

UPMC

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 2-11-mc-00121)
District Judge:  Honorable Terrence F. McVerry
_____

Argued March 6, 2012
_____

Before:  SCIRICA, AMBRO, and VAN ANTWERPEN, <u>Circuit Judges</u>

(Opinion filed: March 27, 2012)

Deborah A. Kane, Esquire
Equal Employment Opportunity Commission
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA   15222

P. David Lopez
   General Counsel
Lorraine C. Davis
   Acting Associate General Counsel
Vincent J. Blackwood
   Assistant General Counsel

Paul D. Ramshaw, Esquire (Argued)
Equal Employment Opportunity Commission
131 M Street, N.W.
Washington, DC   20507

 Counsel for Appellant


John J. Myers, Esquire (Argued)
Rebecca L. Magyar, Esquire
Eckert, Seamans, Cherin & Mellott
600 Grant Street
44th Floor, U.S. Steel Tower
Pittsburgh, PA   15219

 Counsel for Appellee

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

The Equal Employment Opportunity Commission ("EEOC") filed a subpoena enforcement application in the United States District Court for the Western District of Pennsylvania, seeking enforcement of an administrative subpoena it issued to the University of Pittsburgh Medical Center ("UPMC") pertaining to the EEOC's investigation into a charge of discrimination against The Heritage Shadyside ("Heritage"), a subsidiary of UPMC.[1]  The District Court denied the request based on its holding that the subpoena was a "fishing expedition" for information not relevant to the

---

[1] Heritage is a wholly owned subsidiary of UPMC Senior Communities, Inc., which is a wholly owned subsidiary of UPMC.  Though the subpoena, charge of discrimination, and the EEOC refer to Heritage as "UPMC-Heritage Shadyside" or "UPMC Heritage Place," its correct name is as stated above.

2

charge of discrimination. Because our precedent regarding the enforcement of a subpoena issued by the EEOC is stronger than perceived by the Court, we vacate the judgment and remand.[2]

## I. Background

Carol J. Gailey began working for Heritage as a certified nursing assistant in April 2007. She suffers from numerous health conditions. Between November 2007 and January 2008, Heritage granted Gailey a personal leave of absence ("PLOA") and short-term disability benefits in accordance with UPMC's policies.[3] She returned to work in a light-duty, part-time capacity. In May 2008, she was granted another PLOA for the purpose of having cancer surgery. This PLOA expired in June 2008, and Gailey failed to report to work at the end of the PLOA.

UPMC's PLOA policy requires an employee on a PLOA to communicate with her employer on a regular basis regarding her leave. It also provides that the failure to report to work on the work day after the leave expires is considered a voluntary resignation. Because Gailey did not communicate with Heritage or report to work, Heritage treated her silence as a voluntary resignation and terminated her employment effective the day after her PLOA expired. Approximately three weeks later, Gailey spoke with Heritage and was told that her employment had been terminated.

---

[2] The District Court had jurisdiction under 29 U.S.C. § 161(2) and 28 U.S.C. §§ 1331 and 1345. We have jurisdiction under 28 U.S.C. § 1291.

[3] Gailey had worked for Heritage for seven months at this time. She thus was not eligible for leave under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, which requires an employee to have been employed for at least twelve months, or for at least 1,250 hours of service, by the employer to be eligible for benefits. 29 U.S.C. § 2611(2)(A).

Gailey filed a charge of discrimination with the EEOC.[4]  She alleged that Heritage

had discriminated against her in violation of the Americans with Disabilities Act of 1990,

as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), because it discharged her without

warning while she was on leave to undergo major surgery.  In response, Heritage filed a

position statement that asserted that Gailey's termination was not discriminatory because

it resulted from the neutral application of its policy governing personal leave.  It attached

UPMC's PLOA policy, Disability Income Protection Policy, and certain other policies.

A review of these policies prompted the EEOC to send a request for information to

UPMC (not Heritage).  It asked UPMC to identify employees at all of its facilities in the

Pittsburgh region who had been terminated under the PLOA and/or disability policies.

UPMC objected to the scope of the request, and did not provide the information.  The

EEOC then served a subpoena on UPMC for the information.  It read:  "For the period

July 1, 2008, to the present time, provide documents identifying all employees who were

terminated after 14 weeks of a medical leave of absence pursuant to [UPMC]'s [PLOA]

Policy and/or Disability Income Protection Policy, and/or any other applicable policy."

App. 24.  For each employee identified, it sought ten categories of information.

---

[4] She filed the charge more than 300 days after the date she learned of the alleged
discrimination, which makes the charge untimely.  *See* 42 U.S.C. § 2000e-5(e)(1);
*Callowhill v. Allen-Sherman-Hoff Co.*, 832 F.2d 269, 271 (3d Cir. 1987) ("In a state such
as Pennsylvania which has an agency performing functions similar to those of the EEOC,
the time for filing is extended to 300 days . . . .").  Before the District Court, the EEOC
produced an intake questionnaire that Gailey completed within 300 days after she learned
of the alleged discrimination.  The issue of whether this questionnaire should be
construed as a timely "charge" is not before us.

After denying UPMC's petition to revoke or modify the subpoena, the EEOC filed the subpoena enforcement application. Before the District Court, it stated that "the purpose of the investigation is to determine if there are any employees who were denied medical leave in excess of [UPMC]'s maximum policy limit where such leave would have been an accommodation and would not have been an undue hardship as defined by the ADA." *EEOC v. UPMC*, 2011 WL 2118274, at *4 (W.D. Pa. May 24, 2011). The EEOC similarly noted that it expanded its investigation of Gailey's charge to include all of UPMC's facilities because it "discovered evidence of a policy that on its face appears to bar an entire class of reasonable accommodations." *Id.*

The District Court denied the application based on its holding that the information was not relevant to Gailey's charge of discrimination. It commented that "[i]t is readily apparent that [the] EEOC is interested in pursuing an investigation of UPMC's corporate policies," which "does not appear to have occurred 'during the course of a reasonable investigation'" of Gailey's charge. *Id.* (quoting *EEOC v. Kronos, Inc.*, 620 F.3d 287, 297 (3d Cir. 2010)). The Court faulted the EEOC for doing "almost nothing to determine the specific facts of [Gailey's] discharge," and identified several "narrowly-tailored, potentially-dispositive inquiries" that the EEOC should have made prior to "launching an inquiry into a tangential alleged systemic violation." *Id.* It further determined that the EEOC had not "satisfactorily explain[ed] how the information requested in the Subpoena

*would* 'cast light' on Gailey's claim." *Id.* (emphasis added). It thus concluded that the subpoena was a "fishing expedition."[5]

## II. Discussion

We review a district court's decision regarding a subpoena enforcement application for an abuse of discretion. *Kronos*, 620 F.3d at 295. A district court abuses its discretion when it bases its decision on "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* at 295 (quoting *Chao v. Cmty. Trust Co.*, 474 F.3d 75, 79 (3d Cir. 2007)).

The ADA prohibits, among other things, employers from discriminating against a qualified individual with a disability or a "class of individuals" with disabilities, including through the application of neutral policies and by failing to provide reasonable accommodations absent undue hardship. *See* 42 U.S.C. §§ 12112(a), (b)(5)(A), (b)(6); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 397–98 (2002); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Employers and employees are to engage in an "interactive process" to determine an employee's needs and whether a reasonable accommodation exists. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 771 (3d Cir. 2004). Other Courts of Appeals and the EEOC have concluded that a reasonable accommodation may include offering a qualified individual with a disability a limited

---

[5] Before the District Court, UPMC advanced four arguments, including that the EEOC made no showing of how the requested information was relevant to its investigation of Gailey's charge. Because it concluded that the subpoena sought information was not relevant to Gailey's charge, the Court did not address UPMC's other arguments, and neither do we.

6

amount of additional leave, whether paid or unpaid, regardless whether such an accommodation would violate an otherwise universally applied "neutral" employment policy.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 n.5 (2d Cir. 2006) (citing cases).

The EEOC's power to prevent unlawful employment practices includes the investigation of charges of discrimination.  *See* 42 U.S.C. §§ 2000e-5, 12117(a).  To aid its investigation, it may issue administrative subpoenas.  *See id.* § 2000e-9; 29 U.S.C. § 161(1).  Because the EEOC's investigative authority is not plenary, it is only entitled to subpoena evidence "relevant to the charge under investigation."  42 U.S.C. § 2000e-8(a).

We recently detailed the breadth of the relevancy requirement in *Kronos*.  "Courts have given broad construction to the term 'relevant' and have traditionally allowed the EEOC access to any material that '*might* cast light on the allegations against the employer.'"  *Kronos*, 620 F.3d at 296 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984)) (emphasis added).  For example, the EEOC may subpoena "information that 'may provide a useful context' for evaluating employment practices under investigation, in particular when such information constitutes comparison data."  *Id.* at 298 (quoting *EEOC v. Univ. of Pittsburgh*, 643 F.2d 983, 985–86 (3d Cir. 1981)).  Indeed, the scope of the subpoenaed information may reflect the extent to which an employer uses a particular practice, even if the use is nationwide.  *Id.* ("An employer's nationwide use of a practice under investigation supports a subpoena for nationwide data on that practice.").  In addition, "[o]nce the EEOC begins an investigation, it is not

7

required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation of the charge." *Id.* at 297.

The relevancy requirement, however, does not confer "unconstrained investigative authority" on the EEOC, whose burden it is to show relevance. *Id.* (quoting *Shell Oil*, 466 U.S. at 64–65). Rather, the "power of investigation is anchored in the charge of discrimination . . . . The relevance requirement 'is designed to cabin the EEOC's authority and prevent fishing expeditions.'" *Id.* (quoting *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002)) (internal citations omitted).

However, the relevance requirement is not demanding. *Id.* at 296. As such, a district court's role in a subpoena enforcement proceeding is limited. It should not assess the likelihood that the EEOC will be able to prove the discrimination claims it is pursuing. *Shell Oil*, 466 U.S. at 72 n.26; *EEOC v. Franklin & Marshall College*, 775 F.2d 110, 116 (3d Cir. 1985) ("[T]he Supreme Court [has] . . . rejected the proposition that a district court must find the charge of discrimination to be well-founded, verifiable, or based on reasonable suspicion before enforcing an EEOC subpoena."). Moreover, the EEOC is not limited to investigating the allegations stated in the charge. "[Its] investigatory power is broader than the four corners of the charge; it encompasses not only the factual allegations contained in the charge, but also any information that is relevant to the charge. . . . [T]he EEOC need not cabin its investigation to a literal reading of the allegations in the charge." *Kronos*, 620 F.3d at 299. Likewise, the charge does not need to contain the legal theory under which the EEOC proceeds. "[T]he individuals who draft charges are often 'not well [versed] in the art of legal description'

8

and as a result, 'the scope of the original charge should be liberally construed.' . . . [I]t is up to the EEOC . . . to investigate whether and under what legal theories discrimination might have occurred." *Id.* at 300 (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978)).

Though the District Court quoted *Kronos* for the applicable principles to assess the EEOC's authority to enforce a subpoena, its application of those principles to the EEOC's subpoena against UPMC is more circumscribed than *Kronos* requires. First, the Court stated that the "EEOC has failed to satisfactorily explain how the information requested in the Subpoena *would* 'cast light' on Gailey's claim." *EEOC v. UPMC*, 2011 WL 2118274, at *4 (W.D. Pa. May 24, 2011) (emphasis added). Under *Kronos*, the EEOC is entitled to access any material that *might* cast light on the charge. 620 F.3d at 296. Second, the Court did not address how the EEOC failed to meet its burden to demonstrate relevance. Third, the Court emphasized the dearth of evidence that Gailey requested an accommodation or would have been able to perform her job duties even with a reasonable accommodation, and the EEOC's seeming lack of other investigation into Gailey's charge. These inquiries deal with the likelihood that the EEOC will be able to prove the claims it pursues based on Gailey's charge. That is not a district court's charge in considering relevance. *Shell Oil*, 466 U.S. at 72 n.26 ("[A]ny effort by the court to assess the likelihood that the [EEOC] would be able to prove the claims made in the charge would be reversible error."). Moreover, though such evidence and investigation most likely will be crucial to the EEOC's case regarding Gailey's charge, the EEOC is not cabined in its investigation by the specific allegations of and evidence

9

supporting a charge if facts that support additional claims of discrimination are uncovered in the course of a reasonable investigation, provided that its investigation of those additional claims is relevant to or might cast light on the underlying charge.

To recap, Gailey's charge alleged that she was terminated without warning at the end of her PLOA based on her disability. Heritage responded that she was discharged in accordance with UPMC's (not merely Heritage's) personal leave policy. Extrapolating from Gailey's alleged situation, the EEOC questioned whether UPMC, across all its facilities, was engaging in a pattern of discrimination by relying on a "neutral" application of its leave policies to terminate individuals with disabilities without engaging with them to determine if reasonable accommodations existed, potentially in violation of the ADA.

The EEOC argues that evidence of such a pattern of terminating employees may provide a context for, and thereby might cast light on, Gailey's charge. The District Court may be correct that the EEOC is interested in pursuing an investigation of UPMC's corporate policies. But if the EEOC meets its burden to demonstrate that the information is relevant to Gailey's charge, as it construes her allegations, it is entitled to an order enforcing the subpoena notwithstanding that the information may allow it to explore other claims of discrimination against UPMC.

For these reasons, and though what the District Court did here reflected a practical concern about possible overreach by the EEOC, we follow our precedent in *Kronos*.

10

Thus we vacate the District Court's judgment and remand the case for proceedings consistent with this opinion.[6]

---

[6] Because we vacate and remand to allow the Court to reconsider the issue of relevance under the standard set in *Kronos*, we do not address whether the EEOC has met its burden regarding the other requirements that we have set forth for administrative subpoenas. *See Kronos*, 620 F.3d at 296 n.4 ("To obtain enforcement of an administrative subpoena, an agency must demonstrate that: 1) its investigation has a legitimate purpose, 2) the inquiry is relevant to that purpose, 3) the agency does not already possess the information requested, 4) the agency has complied with relevant administrative requirements, and 5) the demand is not 'unreasonably broad or burdensome.'" (citation omitted)).